603 So.2d 349 (1992)
Robert H. BROOME
v.
MISSISSIPPI BAR.
No. 90-BA-1260.
Supreme Court of Mississippi.
June 17, 1992.
*350 Thomas J. Lowe, Jr., Jackson, for appellant.
Charles J. Mikhail, Jackson, for appellee.
En Banc.
PITTMAN, Justice, for the Court:
This appeal arises from a finding by the Mississippi Bar Complaint Tribunal that Robert H. Broome, an attorney practicing law in Batesville, Mississippi, should be suspended from the practice of law in Mississippi for 30 days due to unprofessional and unethical conduct. We find that the 30-day suspension imposed by the Bar is not excessive and affirm the punishment. However, we also find that Broome's conduct was not unethical; it was unprofessional. We add that it is this Court's intention that Broome be automatically reinstated to the practice of law in Mississippi at the end of his 30-day suspension and not be required to petition for reinstatement.

I.
On June 14, 1986, Wayne Luttrell and his brother, J.W. Luttrell, were in an automobile collision in Memphis, Tennessee, due to the negligence of the driver of a vehicle owned by Ophelia Harris who was insured by Government Employees Insurance Company (GEICO). Wayne Luttrell was injured in the collision. A few days after the collision, the Luttrell brothers retained Broome to represent them in a claim for damages against Ophelia Harris. Broome verbally agreed to represent Wayne Luttrell on a contingency basis. No percentage fee was agreed upon. On March 20, 1987, Broome wrote GEICO and demanded a settlement of $50,000.00. Sometime in April, 1987, GEICO corresponded with Broome and made an offer of settlement in the sum of $8,000.00. Broome communicated the offer to Wayne Luttrell. Wayne Luttrell rejected the offer.
On November 16, 1988, Ralph E. Chapman, an attorney practicing law in Clarksdale, Mississippi, corresponded with Broome and requested that Broome transfer Wayne Luttrell's file to Chapman's office. The file was transferred, but Chapman gained little information about the status of the case except for copies of some correspondence. Chapman wrote to GEICO on March 13, 1989, in order to settle the case for Wayne Luttrell. GEICO responded to Chapman on March 13, 1989, advising him that the statute of limitations had expired on the claim. GEICO also provided Chapman with a copy of a letter from GEICO to Broome dated January 6, 1988, advising Broome that the limitation period had expired and that all offers communicated to him were withdrawn. James B. Grenfell, an attorney practicing law in Jackson, Mississippi, corresponded with Broome on behalf of Wayne Luttrell requesting that Broome notify his errors and omissions carrier of a claim by Wayne Luttrell against Broome for his failure to file suit within the period provided under the applicable statute of limitation. Broome did not respond to Grenfell's letter.
On June 4, 1990, a Formal Complaint was filed with this Court by the Mississippi Bar against Broome alleging that he had demonstrated unprofessional and unethical conduct constituting cause for imposition of discipline. Chief Justice Roy Noble Lee of the Mississippi Supreme Court ordered that a Complaint Tribunal consisting of Edward A. Williamson, James Robertshaw, and Patricia Wise be designated to conduct a hearing. Williamson was designated to serve as the Presiding Judge of the Complaint Tribunal. Broome filed his Answer with this Court on June 29 denying that his conduct was unprofessional or unethical.
In May, 1982, several years prior to the filing of the complaint against Broome, the Mississippi Bar had privately reprimanded Broome for representing two different parties with conflicting interests.
In the September 20, 1990, hearing before the Complaint Tribunal on the complaint filed against Broome regarding his representation of Wayne Luttrell, Broome was the only witness to give testimony. Broome said that he had graduated from the University of Mississippi School of Law in January, 1968, was admitted to the Mississippi Bar, and had practiced law continuously *351 since that time. Broome has conducted a general practice of law, devoting about five percent of his practice to personal injury cases. Most of his clientele reside in Mississippi. Broome admitted the facts of the Stipulations and Admissions, except he said he was "sure we  we discussed the percentage, but he says we didn't and I can't dispute him and I don't." Broome knew J.W. Luttrell because he had represented him in some criminal matters. Broome testified that he usually charges a 25% contingency in personal injury cases that are settled and a 33 1/3% contingency in personal injury cases that are tried. Broome added to the Stipulations and Admissions that he furnished the entire Wayne Luttrell file to Chapman. Broome testified that he thought he had communicated to Wayne Luttrell regarding GEICO's letter that the limitation period had expired. Broome also added to the Stipulations and Admissions that he did not notify his errors and omissions coverage carrier of the situation when Grenfell made such a request because he did not have coverage with any carrier. Broome was not sued by Wayne Luttrell through Grenfell.
Broome gave testimony that before he went to law school, he had worked in Memphis, Tennessee, as an insurance adjuster for approximately four years and knew that the statute of limitations for an action in Tennessee, such as Wayne Luttrell's claim, was one year. Because Wayne Luttrell was from Panola County, Broome made "an oversight" and failed to recognize "or remember that it was a one-year statute of limitation." Broome said that "it didn't register" because he does "so infrequent work in the state of Tennessee". Broome had no system in his office to keep up with deadlines for filing suits. Broome simply relied on his memory.
Broome denied that he was incompetent but admitted that he "let the statute of limitations run." Broome contended that he made a mistake but was not incompetent in handling Wayne Luttrell's case. Broome said that he felt he acted diligently and promptly in his representation of Wayne Luttrell because he compiled medical information and collected funds from Wayne Luttrell's insurance company. Broome admitted that his conduct was prejudicial to the administration of justice for Wayne Luttrell.
Upon questioning by the tribunal, Broome testified that the only thing he remembered about Wayne Luttrell's case was that it involved a collision in Memphis and that one of the Luttrell brothers got out of the vehicle after the collision and got into a fistfight with a passenger from the other vehicle. The parties who were involved in the physical altercation were arrested and taken to the police station. Broome also told the tribunal that he had performed some legal research into Wayne Luttrell's case and concluded that there was not any way to obtain jurisdiction over Ophelia Harris in Mississippi.
The tribunal found that Broome demonstrated unprofessional and unethical conduct and that he should be suspended from the practice of law in Mississippi for 30 days. James Robertshaw entered a concurrence with separate opinion that Broome had not acted unethically.

II.
Broome asserts that the punishment imposed by the Complaint Tribunal was excessive considering the infraction committed. He prays that his punishment be reduced to a public reprimand relying on this Court's ruling in Vining v. Mississippi State Bar Association, 508 So.2d 1047 (Miss. 1987). In Vining, the attorney was charged with accepting employment and then neglecting his case. The proof established that Vining, although telling his client that he was handling matters, allowed the statute of limitations to run.
The Complaint Tribunal reviewed Vining's conduct and found that he should be suspended from the practice of law for 120 days. On appeal to this Court, Vining presented mitigating evidence to excuse his professional neglect. The following extenuating circumstances were alleged: (1) his personal health; (2) the health of a family member; and (3) a matter of personal distress. *352 Finding that these factors were worthy of mercy, this Court stated that:
In relying upon his brief to this Court and his appearance at oral argument Mr. Vining has engaged in what is at best a risky business. We look with great disfavor on members of our profession who ignore the well established procedures within the Bar used for handling complaints. We look with even greater displeasure at a member of our profession who neglects his professional duties to those who have sought his help.
Mindful that justice untempered by mercy may be unduly harsh, we are inclined to mercy in this case. This is so not because we consider the 120 days suspension meted out by the Mississippi State Bar Complaint Tribunal to be overly punitive and severe. The punishment was in keeping with the misconduct. However, due to the existence and the very nature of the three extenuating circumstances presented to this Court by Mr. Vining we have determined that the suspension from the practice of law is not appropriate under these peculiar facts. The fates have not dealt kindly with Mr. Vining and we are not disposed to add further to his burdens.
Id. at 1049.
In keeping with the Vining decision, Broome asserts the following factors in mitigation of his conduct:
1. There was no deceit or intentional actions on the part of Broome; in other words, Broome's only offense was negligence;
2. Broome is liable for his negligence in a court of law if the client wishes redress;
3. Although Broome has had one private reprimand issued in 1982, his record is otherwise unblemished;
4. Tennessee's statute of limitations is very short; one year. Although this does not exempt an attorney from inquiring into the statute of limitations of another state, Broome's negligence is not the same as if he had neglected a three or six-year statute;
5. Under the current rules, a one-month suspension from the Bar does not mean that Broome will be barred from the practice for one month. As a practical matter, his application for reinstatement and the accompanying proceedings will stretch his suspension into a minimum of three and possibly five months. This is hardly the result envisioned by the Tribunal or the rules as they now stand, but it is the practical result of their application;
6. Broome completely cooperated with the Bar in the proceedings and admitted his mistake;
7. The failure to file suit within the Tennessee statute of limitations was an oversight, not something which is unethical per se, or as one would say in the criminal law, malum in se, but it is unethical because the rules make it unethical, that is, malum prohibitum.
In light of the above, Broome seeks a reduction of the punishment imposed by the Complaint Tribunal.
The Bar asserts on appeal that the punishment imposed by the tribunal was clearly supported by the evidence below. They admit that mitigating evidence may excuse some negligence on the part of an attorney. Under the facts of this case, however, the Bar asserts that the aggravating circumstances clearly outweigh any mitigating evidence offered by Broome.
First, the Bar would show that Broome's private reprimand in 1982 for representing clients with conflicting interests is an aggravating factor.
Next, the Bar submits that Broome's conduct with regard to Mr. Luttrell's case amounts to an aggravating circumstance because Broome was notified by GEICO that the statute of limitations had run in that matter and did not inform his client of this fact until March 13, 1989, when Luttrell's new attorney wrote to GEICO and was given a copy of a letter to Broome.
Finally, the Bar notes the May, 1989, correspondence of attorney Grenfell with Broome asking him to contact his errors and omissions carrier of a legal malpractice action filed against him by Wayne Luttrell *353 and the lack of a response by Broome to this letter. In fact, Broome had no errors and omissions coverage.
In support of the tribunal's punishment, the Bar cites the decision in Steighner v. Mississippi State Bar, 548 So.2d 1294 (Miss. 1989). There, the Complaint Tribunal sanctioned an attorney for his continual neglect, inadequate preparation, and for his failure to respond to a Motion for Summary Judgment that resulted in the dismissal of the client's case. The tribunal found no deliberate conduct on Steighner's part but imposed a 180 day suspension. This Court affirmed the decision finding that "[t]he facts and the offense and findings of the Complaint Tribunal justify [the penalty imposed]." Id. at 1299.
To further support the tribunal's decision, the Bar cites the recent decisions of Fougerousse v. Mississippi State Bar, 563 So.2d 1363 (Miss. 1990). Fougerousse, an attorney who had previously been given an Informal Admonition, was charged with negligently handling two of his clients' cases. Based upon Fougerousse's misconduct, and also upon his failure to respond to the tribunal's complaint and hearing notices, he was suspended for two concurrent 90 day periods from the practice of law. On appeal, this Court affirmed the tribunal's discipline stating that:
In keeping with this authority and responsibility, we have reviewed like and similar cases of lawyer discipline and hold that the two 90-day suspensions, to run concurrently, are not overly punitive and are accordingly affirmed.
Id. at 1367.
In light of the above decisions, and the aggravating circumstances contained in these facts, the Bar submits that the decision of the tribunal was correct and should be affirmed. We agree.
When this Court reviews a disciplinary action from the Complaint Tribunal, the evidence is examined de novo. Rule 9.4 of the Rules of Discipline for the Mississippi Bar; Steighner, 548 So.2d at 1297. The Court may impose sanctions either more or less severe than the Complaint Tribunal, although deference is given to that body's findings due to its exclusive opportunity to observe the demeanor and attitude of the witnesses, including the attorney, which is vital in weighing the evidence. Mississippi State Bar v. Strickland, 492 So.2d 567 (Miss. 1986).
When considering sanctions for misconduct, the Court considers the following: (1) the nature of the misconduct; (2) the need to deter similar misconduct; (3) preservation of the dignity and reputation of the profession; (4) protection of the public; and (5) sanctions imposed in similar cases. Steighner, 548 So.2d at 1297-98; Mississippi State Bar v. A Mississippi Attorney, 489 So.2d 1081 (Miss. 1986). Discipline "is not to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct." Id.
The question on appeal is simply whether the discipline imposed upon Broome was excessive. Considering the sanctions imposed, we do not find an abuse of authority in this cause. Broome's reliance on Vining, under our facts, is misplaced. He failed to prove any mitigating evidence that would justify a reversal of the Complaint Tribunal. Broome has not shown events of any magnitude comparable to the personal health complications, family health problems, and personal distress experienced by Vining which would cause this Court to be "inclined to mercy" so as to not "add further to his burdens" where the "fates have not dealt kindly". Vining, 508 So.2d at 1049. Further, Broome's reprimand in 1982 for representing clients with conflicting interests and his failure to keep his client fully informed are aggravating factors taken into account by this Court. The discipline of the Complaint Tribunal is affirmed.
The majority, however, adopts James Robertshaw's concurrence to the opinion of the Complaint Tribunal rather than the opinion of the Complaint Tribunal. We agree with James Robertshaw's notation that Broome's conduct was not unethical; it was only negligent. There is no *354 indication that Broome's actions which prejudiced his client's cause were intentional or deliberate.

III.
Pursuant to Rule 12(a) of the Rules of Discipline for the Mississippi Bar, an attorney who has been suspended from the practice of law for any time period can only be reinstated to the privilege of practicing law upon petition. However, we are persuaded by Broome's argument that under the current rules, a one-month suspension from the Bar does not mean that Broome will be barred from the practice for one month. As a practical matter, his application for reinstatement and the accompanying proceedings will stretch his suspension into a minimum of three and possibly five months. This is hardly the result envisioned by the Tribunal or the rules as they now stand.
This Court has exclusive jurisdiction of matters pertaining to attorney discipline and reinstatement, and this Court is the ultimate judge of matters arising under the Rules of Discipline for the Mississippi Bar. Miss. Code Ann. § 73-3-303 (1991 Supp.); Miss.R.Discip. 1(a); Attorney BT v. Mississippi Bar, 589 So.2d 119, 121 (Miss. 1991); Mississippi State Bar v. Attorney D, 579 So.2d 559, 561 (Miss. 1991); Mississippi State Bar v. John A. Nichols, 562 So.2d 1285, 1287 (Miss. 1990); Mississippi State Bar v. Attorney L, 511 So.2d 119, 121 (Miss. 1987); Mississippi State Bar v. Nixon, 494 So.2d 1388, 1389 (Miss. 1986); Mississippi State Bar v. Phillips, 385 So.2d 943, 944 (Miss. 1980); Bramlett v. Burgin, 382 So.2d 284, 286 (Miss. 1979); Matter of Mississippi State Bar, 361 So.2d 503, 505 (Miss. 1978). This Court has authority to reassess the punishment meted out by the Mississippi Bar. Attorney D, 579 So.2d at 561; Myers v. Mississippi State Bar, 480 So.2d 1080, 1094 (Miss. 1985). Even though the Rules of Discipline provide for reinstatement through petition, we find that an order of automatic reinstatement is within the scope of this Court's exclusive and inherent jurisdiction of attorney discipline matters.
This Court has ordered automatic reinstatement of a suspended attorney at the expiration of said suspension on one prior occasion. In an unpublished order issued by Presiding Justice Dan M. Lee, Mississippi State Bar v. D. Shackelford Shipp, Cause 90-BA-1327 (August 14, 1991) (available in Supreme Court of Mississippi Minute Book), this Court provided for the automatic reinstatement of an attorney suspended from the practice of law for sixty (60) days. We now find that a similar automatic reinstatement is warranted in the cause at bar.
Based on the foregoing, the decision of the Complaint Tribunal is affirmed as modified and it is hereby ordered that Attorney Robert H. Broome be suspended from the practice of law for a period of thirty (30) days and issued a public reprimand. It is further ordered that this suspension shall commence thirty (30) days after the date on which this opinion and judgment become final and that Attorney Robert H. Broome shall be automatically reinstated to the status with the Mississippi Bar which existed prior to the issuance of this Order at the expiration of said suspension. Furthermore, it is ordered when this opinion and judgment becomes final, the Clerk of the Supreme Court of Mississippi shall immediately forward an attested copy to the Circuit Court Judges and Chancellors in and for Panola County, Mississippi, with instructions to the senior judges of each court to include a copy of this opinion and judgment upon the minutes of their respective courts. Furthermore, it is ordered that the Clerk of the Supreme Court of Mississippi shall immediately forward the attorneys of record for the parties herein a copy of this opinion and judgment. It is also ordered that when this opinion and judgment become final, the Clerk of the Supreme Court of Mississippi shall immediately forward an attested copy to the Clerks for the Federal District Courts, Northern and Southern Districts of Mississippi, and to the Clerk of the United States Court of Appeals for the Fifth Circuit, and to the Clerk of the United States Supreme Court. It is further ordered that the Bar is *355 entitled to recover from Robert H. Broom all actual and reasonably necessary costs and expenses occasioned by the litigation of this matter.
ORDER OF 30-DAY SUSPENSION, AFFIRMED. THIS COURT ORDERS A PUBLIC REPRIMAND TO BE ENTERED. AUTOMATIC REINSTATEMENT ENTERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
McRAE, dissents with separate written opinion joined by DAN M. LEE, P.J., and BANKS, J.
McRAE, Justice, dissenting:
The majority has chosen to suspend Robert Broome from the practice of law for committing a single act of simple negligence that the majority concedes did not amount to an ethical violation. Fearing that the majority has not discerned the full implications of its decision, I dissent.
Broome admits he made a mistake. According to his account, he simply forgot that Tennessee has a shorter statute of limitations than Mississippi. Broome's oversight was certainly negligent. The error is somewhat understandable, however, given the brevity of Tennessee's limitations statute and Broome's relative unfamiliarity with Tennessee law.
Never before has this Court disciplined an attorney for a single, isolated incident of simple negligence. Each time we have imposed discipline in a case involving negligence, the attorney had either engaged in an ongoing course of neglect or committed the negligence in connection with some other blameworthy activity. See, e.g., Fougerousse v. Mississippi State Bar Ass'n, 563 So.2d 1363 (Miss. 1990) (attorney suspended for engaging in "pattern of delay, tardiness, and denial"); Steighner v. Mississippi State Bar, 548 So.2d 1294 (Miss. 1989) (attorney engaged in course of "continual" neglect and inadequate preparation); Vining v. Mississippi State Bar Ass'n, 508 So.2d 1047 (Miss. 1987) (attorney suspended for allowing statute of limitations to run on client's action while misrepresenting to client that matter was being handled). These cases accord with the position set out by the ABA in Informal Opinion 1273:
Neglect involves indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client. The concept of ordinary negligence is different. Neglect usually involves more than a single act or omission. Neglect cannot be found if the acts or omissions complained of were inadvertent or the result of an error of judgment made in good faith.
ABA Informal Op. 1273 (1973). Jurisdictions throughout the nation follow the same principle. See, e.g., In re Qualiata, 180 A.D.2d 38, 583 N.Y.S.2d 21 (1992) (where attorney had previously been subject of three bar complaints, two involving neglect of legal matters, court ordered suspension for attorney's having allowed statute of limitations to run); In re Lenoir, 604 A.2d 14 (D.C.Ct.App. 1992) ("pervasive neglect" required discipline); Columbus Bar Ass'n v. Nichols, 61 Ohio St.3d 546, 575 N.E.2d 799 (Ohio 1991) (suspension warranted where attorney let statute of limitations expire in one cause, was dilatory in filing complaints and discovery in matters pertaining to three other clients, and failed to appear at a pretrial conference); In re Disciplinary Action Against Morin, 469 N.W.2d 714 (Minn. 1991) (attorney disciplined for neglecting representation of four clients); The Florida Bar v. Knowles, 572 So.2d 1373 (Fla. 1991) (attorney disciplined for, inter alia, failing to file complaints in two separate matters despite repeated inquiries by clients); People v. Gregory, 797 P.2d 42 (Colo. 1990) (court disciplined attorney upon finding a "pattern of neglect" where attorney failed to file complaint, failed to investigate or conduct discovery, and intentionally misrepresented to clients that case was progressing); In re Tessler, 783 S.W.2d 906 (Mo. 1990) (multiple acts of neglect, including allowing a statute of limitations to run, warranted suspension); Oklahoma Bar Ass'n v. Fuller, 748 P.2d *356 990 (Okla. 1988) (public censure appropriate where attorney let statute of limitations expire, neglected to return client's calls, and lost client's file containing material evidence).
The Rules of Professional Conduct require attorneys to conduct their affairs professionally; they do not require superhuman perfection. I dare say that the only lawyers who have never made a careless error in representing a client are those one who have never practiced law. Yet under the majority's ruling, it seems that attorneys are automatically subject to a thirty-day suspension for any and all negligent acts. What happens if a lawyer loses a case after failing to raise an affirmative defense? Would this also result in a thirty-day suspension for "unprofessional" conduct? What if an otherwise punctual attorney forgets to attend a hearing and brings prejudice to his client's cause? Must he suspend his practice for thirty days? While I don't condone professional negligence, I do recognize that an active attorney will inevitably make mistakes. To err is human. However, a legal mechanism exists to insure that clients of lawyers  as well as other professionals  receive compensation for negligently inflicted injuries.
The majority's rule could also be applied to other professions and licensed activities. Should a physician's license be suspended if he negligently fails to make a proper diagnosis? Should we deprive an architect of his license if a building he designed requires repair because of a miscalculation? What about the driver of an automobile who negligently runs a stop sign and causes an accident? Should his driver's license be suspended for this cause alone? What about the insurance company which denies a claim in bad faith? Should its license to do business be suspended?
The answer to each question is, of course, "no." The purposes of a license revocation or suspension include deterrence of future misconduct, protection of the public, and, in the case of attorney discipline, vindication of the profession. See Fougerousse, 563 So.2d at 1366. Professional discipline for one isolated incident of simple negligence serves none of these purposes. One imprudent act indicates neither a propensity for future carelessness nor an imminent risk of disservice to future clients; one unmindful oversight brings the profession into disrepute only in the eyes of those who have forgotten that lawyers, too, are human and prone to err.
No act of negligence should be condoned. But in the absence of a continuing pattern of neglect or some other aggravating circumstance such as an attempt to cover up the error, professional discipline is neither necessary nor appropriate. If prejudiced by an attorney's honest but careless mistake, a client may resort to our courts or to the Clients' Security Fund to obtain redress for his injuries. Justice requires no more. I would not suspend this attorney.
DAN M. LEE, P.J., and BANKS, J., join this opinion.