919 So.2d 36 (2005)
The MISSISSIPPI BAR
v.
Albert H. TURNAGE.
No. 2004-BA-00324-SCT.
Supreme Court of Mississippi.
June 16, 2005.
*38 Adam Bradley Kilgore, and Gwen Combs, Jackson, attorneys for appellant.
James C. Patton, Jr., Kosciusko, attorneys for appellee.
EN BANC.
COBB, Presiding Justice, for the Court.
¶ 1. The Mississippi Bar appeals a decision of the Complaint Tribunal imposing on attorney Albert H. Turnage a six-month suspension from the practice of law, of which four months were stayed on the condition that Turnage not violate any Rule of Professional Conduct during the effective six months. Turnage pled nolo contendere to charges brought against him by the Mississippi Bar for violation of Rule 5.3(b)[1], Rule 7.2(I)[2], Rule 7.3(a)[3], and Rule 8.4(a)[4] and (d)[5] of the Mississippi Rules of Professional Conduct, but challenged the Bar's charge of violation of Rule 5.3(c).[6] Following a hearing, the Tribunal consisting of Jannie M. Lewis, Gregory K. Davis and Constance Slaughter-Harvey found that Turnage violated each of the above rules, including 5.3(c). The Mississippi Bar argues that the two-month suspension imposed by the Tribunal was *39 "too lenient and insufficient to deter like and similar conduct from being committed by Mr. Turnage and other lawyers." The Bar does not recommend a specific period of suspension for Turnage, mentioning only a "lengthy suspension." Turnage argues that a suspension is not a reasonable sanction for a first offense of solicitation and that he should receive only a public reprimand. Because this was Turnage's first offense, and he promptly acknowledged his misconduct, took immediate remedial action, and pled nolo contendere to all but one charge,[7] we hold that he should be suspended from the practice of law in the state of Mississippi for four months, which shall begin on the date of this opinion.

FACTS
¶ 2. There is no dispute as to the facts of this case, and we adopt the following factual findings from the opinion of the Complaint Tribunal:
On a date in May 2002, Dennis Williams (hereinafter Mr. Williams) contacted Mr. Turnage in inquire about the possibility of Mr. Turnage hiring him to assist in finding Plaintiffs for insurance litigation that Mr. Turnage was advertising. Mr. Williams advised Mr. Turnage that other attorneys had utilized his services in the past. Mr. Turnage hired Mr. Williams, a former insurance salesman, and gave Mr. Williams a client package which contained a client intake form, a set of questionnaires and Mr. Turnage's retainer agreement. Mr. Williams contacted approximately one hundred (100) potential clients and successfully signed sixty-three (63) as clients. Mr. Williams made the decision that the potential clients were eligible to participate in the Life of Georgia litigation and had them to sign Mr. Turnage's retainer agreement. This took place over a period from sometime in May 2002 to June 14, 2002. On or about June 14, 2002, Mr. Williams returned the clients' packages that included the retainer agreements to Mr. Turnage.
After Mr. Turnage received the clients' packages from Mr. Williams, clients began to call him about the litigation. One client advised Mr. Turnage that he/she never signed the agreement and that his/her name had been forged. Mr. Turnage consulted with another member of the Bar regarding the clients signed by Mr. Williams. Upon being advised the procedure used to sign clients may have violated MRPC [Mississippi Rules of Professional Conduct], Mr. Turnage terminated his arrangement with Mr. Williams, on or about June 27, 2002, and did not pursue any of the sixty-three (63) cases signed-up by Mr. Williams. Mr. Turnage paid Mr. Williams $20.00 per hour, including mileage. A 1099 tax form for the year 2002 showed that Mr. Turnage paid Mr. Williams a total of $2,000.00 in compensation. This was the only occasion Mr. Turnage had used a non lawyer, independent contractor/investigator to contact potential clients. Mr. Turnage stated that he did not realize Mr. Williams could not have clients sign his retainer agreements, until he had a conversation with his attorney, James C. Patton, Jr., on or about June 27, 2002. Mr. Turnage has practiced law since 1991 and has held positions as Municipal Court and Justice Court Judges.
¶ 3. The briefs and record do not explain the nature of the insurance litigation for which Turnage was soliciting clients except that the insurance company was Life of *40 Georgia. The Insurance Questionnaire admitted into evidence contained questions generic to any insurance company, such as "[h]as the agent ever stolen your premiums?" and "[a]gent ever lied to you?" In addition, although he acknowledged advertising for other types of mass torts besides insurance, Turnage explained that the clients approached by Williams were not personal injury clients and had not sustained physical injuries. We make no distinction between solicitation for clients in insurance litigation and in other litigation.

ANALYSIS
¶ 4. This Court has exclusive jurisdiction over all matters pertaining to attorney discipline and is "the ultimate judge of matter[s] arising under the Rules of Discipline for the Mississippi Bar." Miss. Bar v. Thompson, 797 So.2d 197, 198 (Miss.2000). In order to be subject to discipline, an attorney must be shown by clear and convincing evidence to have violated a rule of professional conduct. Goodsell v. Miss. Bar, 667 So.2d 7, 9 (Miss. 1996). Upon appeal this Court reviews the entire record and the conclusions of the Tribunal de novo. R. Discipline Miss. Bar 9.4; Broome v. Miss. Bar, 603 So.2d 349, 353 (Miss.1992). The Court may impose sanctions of either more or less severity than those imposed by the Complaint Tribunal, although deference may be given to the Tribunal's findings because it has the opportunity to observe the demeanor and attitude of the witnesses. Broome, 603 So.2d at 353.
¶ 5. Rule 9(b) of the Rules of Discipline limits the sole question on appeal, with regard to the five violations to which a plea of nolo contendere is entered, to the nature and extent of discipline to be imposed. Miss. Bar v. Walls, 890 So.2d 875, 877 (Miss.2004). Turnage's appeal with regard to the Tribunal's finding of the violation of Rule 5.3(c) also challenges only the discipline imposed.
¶ 6. In measuring the appropriateness of attorney punishment for violation of the Rules of Professional Conduct, this Court weighs the following factors: (1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) the protection of the public; (5) the sanctions imposed in similar cases; (6) the duty violated; (7) the lawyer's mental state; (8) the actual or potential injury resulting from the misconduct; and (9) the existence of aggravating or mitigating factors. Id.

1. Nature of the Misconduct Involved and the Duty Violated

¶ 7. This Court has previously stated that "[s]olicitation has never been recognized as beneficial to the profession or to the client. It has the potential for creating litigation, creating fraudulent claims, and turning our profession from one of service to one of profit. Solicitation can result in a diminished status for the lawyer and be harmful to the profession's reputation." Emil v. Miss. Bar, 690 So.2d 301, 327 (Miss.1997). Notwithstanding this clear statement of potential harm, this Court found that Emil's multiple acts of solicitation, without more, would warrant only a public reprimand.[8] These concerns should apply equally to prohibit paying others to locate prospective clients, recommend *41 a lawyer's services, and obtain those prospective clients' signatures on professional service agreements.
¶ 8. Here, the Mississippi Bar disputes the Tribunal's characterization of Turnage's solicitation of approximately 100 potential clients as a "single incident." Both the Bar and the Tribunal emphasize the large number of potential clients contacted by inappropriate means in this case, and the Bar argues that each contact should be judged as a single violation. Turnage argues that Williams contacted the potential clients over a six-week period for the purpose of advancing litigation against Life of Georgia, thus implying only one lawsuit. We hold that under the facts of the present case, it is not necessary to determine a specific number of incidents, violations, or potential law suits.
¶ 9. In Emil, this Court found that Emil solicited a number of clients through a private investigator between 1984 and 1988 and that he also shared fees with nonlawyers. Id. at 305, 316-317, 327, 328. These solicitations involved multiple cases. We found "that for the solicitation of business the appropriate punishment for Mr. Emil is a public reprimand. We also find that Mr. Emil was guilty of soliciting business and sharing legal fees. For this violation we order [indefinite] suspension of Mr. Emil's license to practice law." Id. at 328. The implication clearly was that more than one solicitation would still warrant only a public reprimand, but no specific guidance was given regarding "how many is too many." Although Turnage's violation of the rule against solicitation involved 100 potential clients, the infractions occurred over a very short period of time, and more importantly, Turnage took immediate action to acknowledge the error of his ways and to rectify the problem. There was no proof presented to the Tribunal of any harm to any of the many people who were solicited.

2. Need to Deter Similar Conduct

¶ 10. That solicitation has the potential for creating litigation, creating fraudulent claims, and turning our profession from one of service to one of profit, is perhaps more evident today than when Emil was decided. The purpose of attorney discipline is not only to punish the wrongdoer, but also to deter other members of the Bar from engaging in similar misconduct. As this Court said in Emil, solicitation is a serious ethical violation that invokes needless litigation and has the potential for overreaching, which can result in overcharging those who are unable to make an informed decision. "The need to deter similar misconduct among the bar at large is very strong." Id. at 327. The arguably lenient disposition in the present case should not be construed to mean that this Court approves or encourages similar misconduct. Turnage received no pecuniary gain. Indeed, he lost 63 potential clients, lost the $2,000 paid to Williams, and upon imposition of the four-month suspension today, he will have further pecuniary loss.

3. Preservation of the Dignity and Reputation of the Profession

¶ 11. Turnage argues that the dignity and reputation of the profession has not been harmed because there is no finding that he committed any fraud, dishonesty, or neglect of clients' cases. However, among many persons in our society today there is a low regard for lawyers and the legal profession. Consequently, in disciplinary proceedings there is a strong need to rectify abuses in order to preserve the dignity and reputation of the profession. "The Preamble to the Rules of Professional Conduct points out that where *42 members of the Bar neglect the responsibilities of self-governance, by being less than diligent in weeding out abuses within the profession, both the independence of the profession and the public interest which it serves are jeopardized." Rogers v. Miss. Bar, 731 So.2d 1158, 1172 (Miss. 1999).

4. Protection of the Public

¶ 12. "One of our duties, as a self-governing profession, is to protect the public interest." Id. "The public needs protection from lawyers who find it appropriate to solicit business at any time or place." Emil, 690 So.2d at 327. Turnage argues that a public reprimand will adequately protect the public since this was his first offense. He chose not to contest the charges against him and took appropriate remedial action, by terminating his relationship with Williams and the solicited clients, in an effort to rectify any harm his actions caused. However, this Court still has a duty to discipline offending lawyers, "not to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct." Broome, 603 So.2d at 353.

5. Sanctions Imposed in Similar Cases
¶ 13. There are few Mississippi cases dealing with attorneys who violate the rule against solicitation. In Miss. State Bar Ass'n. v. Moyo, 525 So.2d 1289, 1298 (Miss.1988), this Court disbarred a lawyer for numerous violations, including personal solicitation, charging and securing an unconscionable fee, failure to keep records of disbursements of client's money, conversion of a client's money, attempting to obtain unsecured loan from client's money, and failure to counsel client's guardian as to duties regarding client's money. These violations occurred in the course of one lawsuit. When discussing the charge of solicitation, this Court held "[f]or this violation alone, in a first offense, Moyo should receive a public reprimand." Id. A more recent and insightful case is Emil, discussed above. As in Moyo, the Court in Emil held that the appropriate punishment for solicitation was a public reprimand. However, since Emil was also guilty of sharing fees with a non-lawyer, this Court ordered the indefinite suspension of Emil's license until he passed all sections of the Mississippi Bar Examination. Emil, 690 So.2d at 327.
¶ 14. Turnage argues that the present case is different from Emil because "all of the victims in the alleged acts [of Emil] were `persons suffering from the shock of loss or serious injury to love one[s].... They were vulnerable.'" Id. at 327 (quoting that complaint tribunal's opinion). According to Turnage, the potential clients approached by Williams were not personal injury clients and thus the nature of misconduct was not as great as in Emil. We reject this rationale. Additionally, the Court in Emil suspended the offending attorney because he committed more than one violation: solicitation of clients and sharing fees with a non-lawyer. In the present case, Turnage pled nolo contendere to both solicitation and paying another person to recommend Turnage's services. Thus, Turnage's argument against following the punishment in Emil is misplaced.
¶ 15. The Bar argues that Turnage should be suspended for more than the two months imposed by the Tribunal, because such a short suspension is inadequate to deter similar misconduct by Turnage and other attorneys. In support of this argument, the Bar cites several cases from other jurisdictions as examples. Although it is unnecessary to look to other states, when the issue of appropriate punishment *43 for solicitation and related violations has been addressed by this Court in Moyo and Emil, we nevertheless review the cases from other jurisdictions cited by the Bar involving violation of the prohibition against compensating others for recommending an attorney's services.
¶ 16. In the case of In re Kennedy, 268 Ga. 751, 493 S.E.2d 705 (1997), the Georgia Supreme Court affirmed Kennedy's eight-month suspension for paying individual non-lawyers a fee for recommending his services. Kennedy is dissimilar to the present case in that Kennedy admitted guilt only after being caught in an official state and media investigation, whereas Turnage took immediate steps to end and remedy his violations. Next, the Bar cites Cincinnati Bar Ass'n v. Haas, 83 Ohio St.3d 302, 699 N.E.2d 919 (1998). In Haas, the Ohio Supreme Court suspended Haas for one year for entering into an agreement with an insurance company salesman to refer personal injury cases in exchange for a portion of the fee earned. This conduct occurred for six years. The present case differs from Haas, however, in that Williams was paid an hourly rate for his time, not a percentage of the recovery. Finally, the Bar cites Cincinnati Bar Ass'n v. Rinderknecht, 79 Ohio St.3d 30, 679 N.E.2d 669 (1997). In Rinderknecht, the Ohio Supreme Court suspended the offending attorney indefinitely for organizing a program in conjunction with a business consultant and a doctor to call recent accident victims and secure legal as well as medical business. Rinderknecht and his associates not only hired persons to call accident victims at home, but also hired persons to monitor police radio scanners. The employees listening to police radio scanners often arrived at the scene of an accident before police and other emergency personnel. The present case differs from Rinderknecht obviously in the sophistication of the misconduct and the personal injury nature of the cases.

6. The Lawyer's Mental State

¶ 17. Turnage testified that he graduated from the University of Mississippi School of Law, has been licensed to practice law in Mississippi since September, 1991, and that he had served as a county attorney, Jefferson Davis County Justice Court Judge, and Monticello's municipal judge. Turnage testified that he did not know that employing Williams to solicit cases was a violation of the Mississippi Rules of Professional Conduct. In testimony before the Tribunal, Turnage admitted that he knew it was unethical to solicit cases, but said he did not know using Williams to solicit cases was also an ethical violation. Turnage undertook remedial action as soon as he learned that his conduct was unethical, and he was cooperative throughout the investigation.

7. The Actual or Potential Injury Resulting From the Misconduct

¶ 18. The Complaint Tribunal found that there was no evidence of any actual or potential injury to the persons contacted by Williams or those who signed contracts to become clients of Turnage, and noted his immediate remedial actions. The Bar, however, argued generally that there was harm to the clients' expectations and to the public's confidence in the legal system. No specific evidence or testimony was presented on this factor.

8. The Existence of Aggravating or Mitigating Factors

¶ 19. To his credit, Turnage immediately terminated representation of the solicited clients and his employment of Williams when he became aware of the potential violations of the Mississippi Rules of Professional Conduct. His testimony *44 to this fact is undisputed. Turnage also had no pecuniary gain from his ethical violations. Turnage has shown remorse by his mitigating actions and nolo contendere plea. He cooperated in the investigation. The Bar argues that the harm suffered by Turnage's clients and those he contacted cannot by "undone" by Turnage's subsequent actions. However, this Court looks favorably on attorneys who acknowledge their ethical violations and who voluntarily take remedial action to lessen any harm caused or potential harm created. See L.S. v. Miss. Bar, 649 So.2d 810, 813, 815 (Miss.1994).

CONCLUSION
¶ 20. After thorough review of the record and considering all of the criteria used by this Court in determining appropriate discipline, we hold that Albert H. Turnage shall be suspended from the practice of law for four months for violations of Rules 5.3(b) and (c), 7.2(I), 7.3(a), and 8.4(a) and (d). There was no evidence of actual harm caused by Turnage's actions, and he took appropriate remedial actions when he became aware of his violations. While this Court has previously stated that a public reprimand is the appropriate punishment for the first time offense of solicitation, in this case a suspension is warranted since Turnage also paid a person to solicit cases for him.
¶ 21. ALBERT H. TURNAGE IS SUSPENDED FROM THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI FOR FOUR MONTHS FROM AND AFTER THE DATE OF THIS OPINION AND SHALL PAY THE COSTS OF THIS DISCIPLINARY PROCEEDING.
SMITH, C.J., WALLER, P.J., CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.
NOTES
[1] Rule 5.3(b) provides that "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."
[2] Rule 7.2(I) provides that "[t]he lawyer shall not give anything of value to a person for recommending the lawyer's services...."
[3] Rule 7.3(a) provides "[a] [l]awyer shall not by in-person or live telephone contact solicit professional employment from a prospective client with whom the lawyer has no family, close personal, or prior professional relationship when a significant motive of the lawyer's doing so is the lawyer's pecuniary gain.
[4] Rule 8.4(a) provides "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another."
[5] Rule 8.4(d) provides "[i]t is professional misconduct for a lawyer to:(d) engage in conduct that is prejudicial to the administration of justice."
[6] Rule 5.3(c) provides that "a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if: (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or (2) the lawyer is a partner in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.
[7] At the hearing before the Tribunal, Turnage in essence abandoned his contention that his immediate remedial action negated his misconduct.
[8] Writing for the majority in Emil, Presiding Justice Sullivan wisely noted the dilemma caused by case law allowing lawyers to advertise for clients while at the same time continuing to hold that solicitation is a violation of the Rules of Professional Conduct, stating that "[t]he Bar's official position on solicitation is difficult in light of the Bar's position on advertising." 690 So.2d at 327.