492 So.2d 567 (1986)
MISSISSIPPI STATE BAR ASSOCIATION
v.
Roy B. STRICKLAND.
Misc. No. 131.
Supreme Court of Mississippi.
July 9, 1986.
As Modified on Rehearing August 13, 1986.
Andrew J. Kilpatrick, Jr., Jackson, for appellant.
W. Joel Blass, Mize, Thompson & Blass and Boyce Holleman, Gulfport, for appellee.
Before PATTERSON, C.J., and HAWKINS and ANDERSON, JJ.
*568 HAWKINS, Justice, for the Court:
The Mississippi State Bar Association has appealed from a decision of a complaint tribunal relative to Roy B. Strickland, an attorney. We find that Strickland's misconduct merits suspension from the practice of law for a period of three years.

FACTS
Archie A. Lott died testate December 3, 1969. Strickland was employed to represent Mrs. Leah Lundy Lott, widow, sole devisee and executrix of his estate. In the course of the administration of this estate, a suit was filed against L.S. Broadus, who was a business partner in the retail furniture business with Lott during his lifetime. This matter was in court a number of years. Mrs. Lott died January 4, 1976, and by holographic will left all her estate to Mrs. Mildred L. Ramond, her sister. Mrs. Ramond, as executrix of Mrs. Lott's estate, kept Strickland as the attorney. The Broadus suit was kept active.
In November, 1979, the Broadus action was concluded, having theretofore been appealed to this Court and the chancery court decree affirmed. Broadus delivered a check to Strickland's office dated November 30, 1979, in the amount of $39,380.50, payable to Strickland as attorney and to Mrs. Ramond. Both Strickland and Mrs. Ramond endorsed the check. It was deposited in Strickland's personal account. Neither of the Lott estates nor Mrs. Ramond ever received any of the proceeds of this check.
Unhappy that she had received none of the check proceeds and had heard nothing from Strickland, in a few weeks Mrs. Ramond began to make inquiry as to fifty percent of this sum, which she thought she or the estate should receive. She was never able to talk with Strickland, however, only his secretary. This situation continued until her accountant advised her to employ Joe Sam Owen, another attorney, to represent her.
Owen prepared a letter dated July 21, 1981, for Mrs. Ramond to mail to Strickland discharging him, asking for files and cash he had belonging to the estate. The letter also advised him that any claim he had for fees should be directed to the court.
On August 14, 1981, the chancery court of the First Judicial District of Harrison County entered an order in the cause that Owen would be substituted as counsel, and discharging Strickland. There was no response to Mrs. Lott's letter of July 21, and on August 26 Mrs. Lott filed a summary petition for discovery of assets under Miss. Code Ann. (1972) § 91-7-103. No hearing was held on this petition. A consent "Final Decree and Judgment," signed by Strickland and Owen, was entered on November 12, 1981, allowing Strickland a fee of $15,380.50 for services rendered, and judgment against him for $24,000. The decree allowed him sixty days within which to satisfy the decree and judgment.
Strickland did not pay the $24,000, and after repeated demand, on January 15, 1982, Mrs. Lott filed a summary motion pursuant to Miss. Code Ann. (1972) § 11-49-3 to require Strickland to pay the money over to her. At the hearing held later that month Mrs. Ramond testified Strickland asked her to come to his office late on Friday afternoon. When she got there and learned about Broadus paying the judgment, Strickland told her that Mrs. Lott had agreed to pay him fifty percent of the fee. She asked if there was anything in writing on this agreement, and Strickland told her there was not. She was satisfied with this fee arrangement, and took Strickland's word that there was such an agreement.
She testified further that because it was late in the afternoon and she did not want to take cash home with her, "... so at that time he let his secretary go to the bank and cash the money and put it in his lock box." She thought with this payment, the estate would be soon settled. (Vol. I, p. 46) She further testified about the difficulty she had in trying to learn something about the funds, and finally employing Owen.
*569 Just prior to this hearing Strickland filed a "Motion to Dismiss and Reply" to the summary motion, alleging that the funds had been assigned to him by Mrs. Lott prior to her death, and attached a copy of the purported agreement, as follows:
 June 2, 1975
MEMORANDON [SIC] AGREEMENT
In addition to other fees for representing my husband's estate, the undersigned sole beneficiary of said estate hereby sets over and assigns to Roy B. Strickland, attorney, all and any amounts he may recover from L.S. Broadus as and for a reasonable fee due to the many frustrating hours and difficulty involved in trying to establish an interest in the furniture business  no other fee for this suit will be paid.
Witness our signatures on this ___ day of June 1975.
 s/Leah Lundy Lott
 s/Roy B. Strickland
Strickland had printed the body of this instrument and signed it. It developed he had no recollection of Mrs. Lott ever signing it. Mrs. Ramond testified at the hearing that the signature was not that of Mrs. Lott's.
At the hearing Strickland testified he had deposited the check in his personal account and spent the proceeds. He stated he had told Mrs. Ramond several times it was a legal fee, and that he was depositing it into his account. He also testified she had telephoned his office, and talked to his secretary about the status of the proceeds, but the first information he had received as to any problem was the July 21, 1981, letter from her terminating his services. Strickland testified he did not think he owed anything, and would not if Mrs. Lott were still living, but he had agreed to pay the $24,000, which he intended to do. He said that with the Lott agreement he had every reason to believe there would never be any question about the money. He testified that he realized he should have come to court to get any fee arrangement approved.
The chancellor found that Strickland had no excuse for failure to pay the $24,000, and entered an order dated February 4, 1981, awarding Mrs. Ramond $26,562.25, which included interest to date, and $5.26 daily interest thereafter, and also suspended Strickland's license to practice law until he paid Mrs. Ramond the money owed her.
On February 8, 1982, with Strickland's permission, his secretary wrote a letter on the firm letterhead and signed his name to it. The letter, addressed to Jon C. Carr, stated Strickland represented Dwight Taylor, and requested Carr contact his insurance company pertaining to an accident.
On February 4, 1983, Strickland paid Mrs. Ramond $24,000 by compromise settlement of all he owed, and on February 11, 1983, the order suspending his license to practice law was vacated.
The Mississippi State Bar filed a complaint against Strickland on March 31, 1983. Strickland answered and filed an affirmative defense to the complaint, asserting an insidious alcoholism, which finally resulted in his being hospitalized. Hearing was conducted before a three-member tribunal August 3, 1983.
Amplifying what she had stated in the chancery court hearing, Mrs. Ramond testified Strickland suggested they cash the check, which was all right with her, but it would also mean she would have to take home a considerable amount of money, as she would not get home in time to bank it. Strickland then told her he would put the money in his lockbox and keep it for her, and that in six to eight weeks "we would be through with the whole thing," and that Strickland's secretary took the check to the bank, so far as she knew.
She said she initially did not become concerned because Strickland had told her the estate would be closed in about two months.
Being unable to talk to him, she finally employed Owen. She again testified that she did not recognize the signature at the bottom of the "agreement," that it was not *570 Mrs. Lott's. A copy of Mrs. Lott's holographic will was exhibited for comparison of the handwriting.
Strickland testified in his own defense as to the difficulty and protractedness of the Broadus suit. He said Mrs. Lott was worried that the Broadus suit would cost more than she would receive, testifying:
And I was able to persuade her to let me continue that by assuring her that it would not cost her more than we got.
* * * * * *
Yes, sir. We discussed, on more than one occasion, that we would split the fee or that I would take all of the fee, and I can't say for certain what any final agreement was with her, but we discussed that several times. And she  it was important to her  I felt  to her health that she know that it wasn't going to cost her more than what she got out of it for that litigation.
He had only a vague recollection of the day Mrs. Ramond came in to endorse the check. He testified he found the June 2, 1975, agreement in his office safe just a few days before the January, 1982, hearing on Mrs. Ramond's summary motion. He had a vague recollection of having written it, but no recollection whatever on the signature. His signature to the instrument was in his handwriting, but he could not say whether Mrs. Lott did or did not sign it. He was unaware of the note's existence until he saw it in his safe.
Again he testified he had the impression he had written and signed the memorandum and Mrs. Lott left with it; he did not remember her bringing it back.
He said the February 4, 1982, letter to Carr was written at his secretary's request, that her brother-in-law had been in an accident.
Strickland again testified he spent the Broadus money, thinking there was never, or never would be any dispute about it, because he thought the money was his.
He had no recollection of any cash being brought to his office, and Mrs. Ramond never asked that any check for her part be written to her that day.
As to the check proceeds, he further testified:
Q. [Judge Ross continuing:] Is it your testimony before us that it was your feeling, impression, understanding, that all of that money was yours and none of it belongs to her?
A. Yes, sir, I thought that we  I didn't think we had any misunderstanding about that at all. Didn't know it until they filed a petition for this accounting.
TRIBUNAL JUDGE EPPES: But when you reached that judgment, Roy, that you just said you reached, you didn't have the knowledge of this memorandum agreement that was back in your safe?
A. No, sir. The agreement  the memorandum and the agreement is not necessarily the same thing. I discussed with Mrs. Lott, before Mrs. Ramond ever came on the scene, the fact that it would never cost her any more than what we got out of it, and as I recall, that was our agreement; that that would be mine. And as I recall, that was Mrs. Ramond's understanding of the agreement that I had with Mrs. Lott.
TRIBUNAL JUDGE PREWITT: Isn't it true that if you thought it was her money, that you would have written her a check out of your trust account or give her your check?
A. I never would have treated it like mine if I had thought it was hers.
Vol. II, pp. 379-380.
The remainder of Strickland's defense was a chronology of his bout with alcoholism, and his struggle to overcome his problem. A treating physician, specializing in chemical dependence cases, testified in Strickland's behalf, as did two fellow attorneys and a retired public official, who likewise suffered from alcoholism.
Strickland sold his home to raise the $24,000 needed to settle the judgment of Mrs. Ramond's.
*571 At the conclusion of the hearing two members of the commission found there had been insufficient evidence against Strickland to warrant further discipline, and even if there had been such evidence, he had already been sufficiently punished.
There was a dissenting opinion of the view sufficient credible evidence had been presented, and also that further disciplinary action was warranted.
By a vote of 2-to-1 the proceedings were dismissed.
The Mississippi State Bar has appealed.

LAW
Proceedings in this case were under the provisions of Miss. Code Ann. § 73-3-301, et seq. (Ch. 302, Laws 1983).
The record reveals three distinguished lawyers of this state performing the unenviable task of sitting in judgment of a fellow attorney, and a dedicated young member of the Bar unselfishly performing the onerous responsibility of presenting distasteful evidence to a complaint tribunal. Unless competent lawyers with integrity are willing to perform the function of these attorneys, the legal profession will surely lose, as indeed it should, all confidence and respect of the public. Fair, honorable complaint tribunals, and the attorney representing our State Bar in matters before them, are all invaluable arms of the judiciary of this state. Again this Court states its profound gratitude to such individuals.
The record likewise reveals two eminent attorneys representing Strickland. It is a credit to him that he had two friends of such prominence appearing and ably defending him.
A thorough and fair hearing was conducted.
While we have deference to the findings of the tribunal, this Court has the non-delegable duty of ultimately finding the facts, and making such conclusion and order from our finding we deem must be reached. See: Miss. Code Ann. § 73-3-329; Clark v. Mississippi State Bar Association, 471 So.2d 352, 357 (Miss. 1985); Levi v. Mississippi State Bar Association, 436 So.2d 781, 782 (Miss. 1983). In Levi, Justice Robertson speaking for this Court, set forth our function in detail.

FINDING
The only major dispute as to the facts in this case is what transpired in Strickland's office when Mrs. Ramond endorsed the Broadus check. Mrs. Ramond's testimony at both hearings leaves questions, although not necessarily as to the accuracy of her version of what happened. If she was concerned about taking so much cash home, why did she not request a check? On the other hand, this money at the time represented an asset of the Lotts' estates, not hers. Also to be remembered, she was a lay person depending upon an attorney she presumably respected. Also, the estate affairs had not been concluded, but she was told they would be attended to in the next few weeks.
We need not dwell upon precisely what occurred in Strickland's office that afternoon, however, for what remains without dispute transcends any bound of appropriate behavior.
Strickland took money belonging to estates he represented and converted it to his own use. This involved moral turpitude. His claim that he thought it belonged to him does not merit the dignity of a response. He had entertained any such thought, it was his duty to communicate such opinion to his client, Mrs. Ramond, and to the court, and get the matter settled, not convert the money to himself.
The first time Strickland communicated any such idea was over two years later, and after he had been cited for failure to abide by the consent decree to pay Mrs. Ramond $24,000.
Here a second act of moral turpitude surfaced. Strickland presented the court with a memorandum agreement which he represented Mrs. Lott signed. Mrs. Ramond testified positively the signature of Mrs. Lott to this instrument was not genuine. *572 She was not disputed. It can only be concluded that the signature of Mrs. Lott to this instrument was a forgery.
By this instrument Strickland attempted to deceive the court, again for his own personal benefit. Although he testified before the complaint tribunal that he never intended to use this instrument at the hearing before the chancellor to relieve himself of the responsibility to pay the $24,000, the fact remains it was a deliberate deceit to benefit himself. It was deceitful and designed to forestall his having to produce the $24,000.
Strickland had the right to offer whatever defense he chose, but in passing upon his fitness to practice law, we have the obligation to determine whether, as an officer of the court, he openly and honestly portrayed his professional conduct to the chancellor at the January, 1982, hearing.
We therefore conclude that Strickland violated the following disciplinary rules:
DR 1-102. Misconduct
(A) A lawyer shall not:
* * * * * *
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
There is and can be no excuse for an attorney ever to convert funds of his client to his own use. There is and can be no excuse for an attorney to attempt to deceive a court in a matter where his own professional conduct has been called into question. Such conduct is ethically wrong, it is morally wrong.
Of a less serious nature, Strickland was guilty of violating Disciplinary Rule 3-101[B] in writing the February 8, 1982, letter at a time when he was suspended from practicing law. DR 3-101[B] states that "A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."
Strickland's defense has some inconsistency itself. He argues that he represented the Lotts' estate diligently and capably for a number of years, and solely as a result of such effort he secured a judgment which might otherwise never have been recovered. He also argues that he was during the same period insidiously becoming increasingly disabled from chronic alcoholism. Indeed, he had only the vaguest recollection of the day the check was endorsed. He does not enlighten us as to how he could have rendered yeomen's service as an attorney while at the same time hitting the bottle every day during working hours.
He carries the first part of the argument to conclusion by his own logic that somehow he was entitled, or possibly had reason to think he was entitled to the entire Broadus proceeds as a fee.
Although no record was ever produced of any kind as to the effort or time expended by Strickland in the Broadus suit, even before the complaint tribunal there was an insinuation that he would not have been overpaid had he received the entire proceeds.
His reasoning is totally misplaced. Whatever fee he would ultimately have been entitled to receive is irrelevant to his culpability, under the facts of this case, in converting the entire check proceeds to his own use.
When asked by a tribunal member to tell the truth, Strickland replied:
I believe it was mine when I did it. And I didn't think there was any dispute then or would ever be a dispute about it.
If Strickland in truth either thought the money was his, or there would be no dispute about his appropriation of the proceeds, it reveals a state of mind totally at odds with fitness to practice law.
On the other hand, if he did not believe it, then he knew he was committing a dishonest act.
*573 Moreover, one of the more disturbing aspects of this case is the attempt by Strickland to somehow insinuate that what he did was no more than improper, but devoid of an intent to appropriate money not his own. We reject such contention out of hand.
The following is in Strickland's favor:
He served honorably in the armed services in the Korean Conflict. He served as a public official of this state, and for a number of years was respected, at least as an attorney with integrity.
He suffered personal problems, a wrecked marriage, and over a period of years become addicted to alcohol. We do not conclude that Strickland's mind became impaired to the degree that he did not comprehend the gravity of his dishonesty to his client regarding property entrusted to him. In that besotted, confused state he also had become sufficiently desperate to attempt to deceive a court of which he was a respected officer.
He presently does not attempt to practice law. He belongs to the organization of Alcoholics Anonymous and is rendering service to those unfortunate members of society who are afflicted with his problem.
He will therefore be suspended from the practice of law for a period of three years from the date of this opinion.
ORDER OF COMPLAINT TRIBUNAL REVERSED AND ATTORNEY SUSPENDED FROM THE PRACTICE OF LAW FOR THREE (3) YEARS.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
WALKER, P.J., not participating.