651 So.2d 541 (1995)
Firnist J. ALEXANDER
v.
THE MISSISSIPPI BAR.
No. 93-BA-00295-SCT.
Supreme Court of Mississippi.
February 23, 1995.
*542 Everett T. Sanders, Natchez, for appellant.
Michael B. Martz, Jackson, Charles J. Mikhail, Pascagoula, for appellee.
En Banc.
JAMES L. ROBERTS, Jr., Justice, for the Court:
Attorney Firnist J. Alexander ("Alexander") appeals a December 9, 1992, judgment of a Complaint Tribunal imposing upon him a sixty day suspension with automatic reinstatement upon the condition that he pay $1,000.00 in restitution damages. The tribunal found that Alexander had violated certain provisions of the Code of Professional Responsibility and The Rules of Professional Conduct in his representation of the plaintiff in a civil action. While we agree that Alexander is guilty of misconduct, we do not think his behavior warrants suspension. Instead, we order a public reprimand and require that Alexander pay restitution in the amount of $2,000.00.

STATEMENT OF THE FACTS
In February, 1986, Bennie and Janie Stewart ("Mr. and Mrs. Stewart or the Stewarts") retained Alexander to pursue a claim against Jimmy and Debra Davis, the owners of Davis Construction Company. The couple had hired the Davises to do some renovations and remodeling on their Jackson County home. The Stewarts felt the Davises were not doing the work as expected and, after having paid them over $5,000.00, the Stewarts fired the Davises. The Stewarts hired Alexander to recover that money which had been paid to the Davises. Alexander accepted the case for an advanced fee of $2,000.00.
*543 After the initial conference at which he accepted the case, there is no evidence of any further contact between Alexander and the Stewarts until August 7, 1986, when Alexander wrote and requested pictures of the house and an itemized statement from the contractor they had hired to complete the renovations. Alexander stated that the reason nothing was done until this time was because he was waiting for the renovations to be completed, so damages could be calculated. The Stewarts sent Alexander the pictures and information he requested in a letter dated August 15, 1986.
Stewart testified that after providing Alexander with the requested information he had very little other contact with him. He called Alexander several times but was told he was not in. Alexander never returned his calls. Stewart also wrote Alexander several letters to which he never responded. Stewart stated that on one occasion Alexander was in the vicinity of Gautier and they had an appointment, but Alexander cancelled.
In July of 1988, Stewart came to Jackson, without appointment, to see Alexander. His purpose in going to see Alexander was to retrieve the $2,000.00 fee paid to him in February of 1986. Alexander advised him to go ahead and file the suit and, if nothing else, take a tax write-off. While Stewart was at Alexander's office, Alexander typed a complaint and gave it, along with a cover letter, to Stewart to take back to Jackson County to file. The cover letter stated that a check was enclosed for the filing fee. When Stewart got to the circuit clerk's office he found there was no check enclosed. He paid the filing fee himself. Alexander also failed to sign the complaint, but the circuit clerk filed the complaint anyway.
In a letter from Mrs. Stewart to Alexander dated August 17, 1988, Mrs. Stewart noted a recent telephone conversation with Alexander. She stated that per advice received from the local bar association, she was requesting that Alexander return to her the $2,000.00 paid in advance on the Davis Construction case. Stewart testified that again there was no response from Alexander. The money was not refunded.
There was an investigatory hearing held on June 26, 1989, at the close of which the Stewarts indicated they no longer wanted Alexander involved in the Davis case. The Stewarts terminated Alexander's services by letter dated June 27, 1989. In the letter they requested their file be sent to them. Alexander did not respond in writing or by telephone to this request. After the June 27, 1989, letter the Stewarts had no more contact with Alexander.
Stewart testified that at the request of the Bar's counsel he went by the Jackson County Courthouse and found that on September 28, 1989, there was filed a Clerk's Motion to Dismiss for Want of Prosecution and an order dismissing the case was entered on November 2, 1989. A copy of the motion had been sent to Alexander, but he failed to notify the Stewarts. After the Stewarts discharged Alexander they never received any documentation that Alexander had filed a Motion to Withdraw. Stewart did not find out the case had been dismissed until he went by the courthouse himself.
When asked about the contact between himself and the Stewarts, Alexander answered that Stewart would call "every couple of months" and that sometimes he would not be in, but that they spoke regularly and he kept the Stewarts informed of developments. He stated the fact that Mr. Stewart was out of the state and Mrs. Stewart was a nurse and worked strange hours made it difficult to set up appointments. He also cited his heavy case load as a reason why it was difficult to schedule appointments. Alexander testified that although he made no written response to Mr. Stewart's letters, he did talk with him on the phone.
Alexander said that although there were no notes concerning legal research in his file it was his practice to consult the code. Alexander did not have his time records with him at the hearing, but it was his estimation that he spent between 17 and 22 hours dealing with the Stewart's case against Davis Construction.
Alexander testified that he was sent a copy of the Clerk's Motion to Dismiss for Want of Prosecution and the order dismissing the suit, but could not remember whether he *544 notified the Stewarts about the motion or the dismissal. Alexander never filed a motion to withdraw as the Stewart's counsel in the suit against the Davises.

DISCUSSION
This Court recently restated our standard of review of Bar discipline matters in Mathes v. Mississippi Bar, 637 So.2d 840 (Miss. 1994), as follows:
Rule 9.4 of the Rules of Discipline provides that on appeal, this Court "shall review the entire record and the findings and conclusions of the Tribunal, and shall render such orders as the Court may find appropriate." See Underwood [v. Mississippi Bar], 618 So.2d [64] at 67 [(Miss. 1993)]; Foote v. Mississippi State Bar Association, 517 So.2d 561, 564 (Miss. 1987). This Court's review of the evidence is de novo; it sits as a trier of fact and is not bound by a substantial evidence or manifest error rule. [Mississippi Bar v.] Mathis, 620 So.2d [1213], at 1219 [(Miss. 1993)]; Underwood, 618 So.2d at 67 [Mississippi Bar v.]; Foote, 517 So.2d at 564.
Mathes, 637 So.2d at 846.
"The burden is on the Bar to show by clear and convincing evidence that an attorney's actions constitute professional misconduct." Attorney W.L. v. Mississippi Bar, 621 So.2d 235 (Miss. 1993) citing Attorney BT v. Mississippi Bar, 589 So.2d 119, 121 (Miss. 1991), Vining v. Mississippi State Bar Ass'n, 508 So.2d 1047, 1048 (Miss. 1987).

WHETHER APPELLANT WAS DENIED DUE PROCESS OF LAW AS GUARANTEED BY SECTION 14 OF THE MISSISSIPPI CONSTITUTION AND THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.
Alexander contends he was denied due process under the United States and Mississippi constitutions because the Bar failed to prove and the Opinion and Judgment of the Tribunal was not supported by clear and convincing evidence and he was not given notice of all the charges against him.

A. THE TRIBUNAL'S FINDING THAT "FROM APPROXIMATELY FEBRUARY 1986 TO JULY 1988, MR. ALEXANDER WAS INACCESSIBLE TO THE STEWARTS, DESPITE SEVERAL INQUIRIES TO HIM ABOUT THE STATUS OF THE CASE BY LETTER AND TELEPHONE," IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
In its Opinion and Judgment, the Tribunal found that the Bar had proven by clear and convincing evidence that Alexander
violated the following provisions of the Code of Professional Responsibility and the Rules of Professional Conduct:
A. For conduct prior to July 1, 1987, Mr. Alexander violated DR6-101(A)(3), which provides that a lawyer shall not neglect a legal matter entrusted to him; and DR1-102(A)(1) and (5), which provide that a lawyer shall not violate a disciplinary rule or engage in conduct that is prejudicial to the administration of justice.
B. For conduct after July 1, 1987, Mr. Alexander violated Rule 1.3, which provides that a lawyer shall act with reasonable diligence and promptness in representing a client; Rule 1.4, which provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information and shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation; and Rule 8.4(a & d), which provide that a lawyer shall not violate a rule of professional conduct and shall not engage in conduct prejudicial to the administration of justice.
Alexander contends the Bar failed to prove by clear and convincing evidence that he violated these rules. After a de novo review of the record, we hold there is ample evidence to meet the clear and convincing burden of proof, that Alexander did in fact violate The Code of Professional Responsibility and The Rules of Professional Conduct, in regard to his representation of the Stewarts in their action against the Davises. From February, 1986, when the Stewarts retained Alexander to represent them in the action and paid him $2,000.00 for his services, until June 27, 1989, over three years later, when *545 the Stewarts discharged Alexander, there is documentation of only six instances of communication, most of which was one-sided on the Stewarts' part.
Giving Alexander the benefit of the doubt, it seems that he was actively working on the case in August of 1986, when he wrote to the Stewarts requesting documents pertaining to the renovations and pictures of the house. The Stewarts provided these items to Alexander some eight days later.
There is no evidence of any further significant communication between the Stewarts and Alexander until July, 1988, when Mr. Stewart went by Alexander's office unannounced in order to try and recover the $2,000.00 paid to Alexander for his representation. Alexander hurriedly typed up a two page complaint and gave it to Mr. Stewart to take to the circuit clerk in Jackson County to file himself. Alexander offered no reason why almost two and a half years after being hired by the Stewarts to represent them against the Davises he waited until Mr. Stewart showed up at his office to type up a complaint. Apparently it did not take much time or effort since he was able to complete it in Mr. Stewart's presence. Alexander made several weak excuses for not seeing the Stewarts during this time, such as a heavy trial calender and Mr. Stewart living in Washington, D.C., but he gave no reason for waiting two and a half years to file a complaint that took him only minutes to prepare.
There is evidence that Alexander spent some time dealing with the case after it was finally filed. There were two letters from Jimmy Davis' attorney put into evidence. The first was to Alexander asking for an extension of time in which to file an answer. The second was to the Jackson County Circuit Court Administrator, in which Davis' attorney states that he had "discussed this matter" with Alexander and they had agreed on a trial date of April 20, 1989. There is no explanation as to why the case never went to trial, although Alexander stated he had some concerns over Debra Davis not filing an answer as well as the possibility that the Davises had filed for bankruptcy.
Alexander also gave no explanation as to why just three months after the Stewarts discharged him the circuit clerk filed a Rule 41(d) Motion to Dismiss because there no "action of record during the preceding twelve months." Rule 41 Miss.R.Civ.Pro. It is also worthy to note that Alexander never filed a Motion to Withdraw. Therefore, he was sent notice of the Motion to Dismiss of which he never made the Stewarts aware.
These facts show a definite failure by Alexander to comply with DR6-101(A)(3) of The Code of Professional Responsibility, which requires that an attorney not "neglect a legal matter entrusted to him," and Rule 1.3 of the Rules of Professional Conduct, which states, "[a] lawyer shall act with reasonable diligence and promptness in representing a client." It is hard to imagine how Alexander could have been any less prompt in pursuing the Stewart's claim. It was two and a half years before a suit was ever filed. Even then, Mr. Stewart had to take a hastily prepared complaint and file it himself.
There is also sufficient evidence that Alexander violated Rule 1.4(a) of the Rules of Professional Conduct which provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." Mr. Stewart wrote at least two letters asking for information about the case to which there is no evidence that Alexander offered any response. Alexander stated that he thought he probably talked with the Stewarts on the phone after receiving these letters. Mr. Stewart also testified that he made numerous phone calls to Alexander's office and was told Alexander was not available. Alexander did not return these calls.
Given the fact that the proof shows by clear and convincing evidence that Alexander violated the rules discussed above, it stands to reason that he also violated DR1-102(A)(1) of The Code of Professional Responsibility which states that "A lawyer shall not: (1) Violate a Disciplinary Rule ... (5) Engage in conduct that is prejudicial to the administration of justice," and Rule 8.4(a) and (d) of The Rules of Professional Conduct, which provides "It is professional misconduct for a lawyer to: (a) violate or attempt to violate *546 the rules of professional conduct... . (d) engage in conduct that is prejudicial to the administration of justice."

B. THE COURT IMPROPERLY CONSIDERED AND IMPOSED DISCIPLINE FOR ALLEGED MISCONDUCT OF WHICH APPELLANT HAD NO NOTICE AND WHICH WAS NOT CONTAINED IN THE FORMAL COMPLAINT.
Next, Alexander argues the Tribunal improperly imposed discipline for misconduct which was not contained in the formal complaint and of which he had no notice. The Formal complaint filed on November 14, 1989, by the Bar against Alexander made no mention of Alexander's actions after he was discharged by the Stewarts on June 27, 1989. At the hearing, however, the Bar produced evidence concerning Alexander's failure to file a Motion to Withdraw, as well as, his failure to notify the Stewarts of the clerk's Motion to Dismiss their complaint and its subsequent dismissal. The Tribunal included these facts in the Findings of Facts section of its Opinion and Judgment. Alexander contends this lack of notice violated his rights of due process and he was unduly prejudiced by the Tribunal's consideration of this evidence.
Bar disciplinary matters are quasi-criminal in nature. Harrison v. Mississippi Bar, 637 So.2d 204, 218 (Miss. 1994); Mississippi State Bar v. Attorney L., 511 So.2d 119, 121 (Miss. 1987); Attorney K. v. Mississippi State Bar Ass'n, 491 So.2d 220, 222 (Miss. 1986). Attorneys accused in such matters are afforded the right to due process of law under the 14th Amendment to the U.S. Constitution and Article 3, Section 14 of the Mississippi Constitution. Harrison, 637 So.2d at 218; Attorney L., 511 So.2d at 122; Myers v. Mississippi State Bar, 480 So.2d 1080, 1087 (Miss. 1985); Netterville v. Mississippi State Bar, 397 So.2d 878, 883-84 (Miss. 1981). This due process of law entitles the attorney to the right of notice and opportunity to be heard. Harrison, 637 So.2d at 218; Netterville, 397 So.2d at 883, citing Mississippi State Bar v. Attorney-Respondent, etc., 367 So.2d 179 (Miss. 1979).
Neither Alexander nor the Bar offers any cases in which additional facts not contained in the Complaint, but pertaining to the same charges alleged in Complaint, were presented as evidence at a disciplinary hearing. Since the Bar presented evidence only of violations of those Rules listed in the complaint and the additional facts put before the Tribunal stemmed from the same set of circumstances outlined in the Complaint, Alexander was properly noticed and should have anticipated the Bar would offer such evidence.

APPROPRIATENESS OF DISCIPLINE
This Court, when reviewing sanctions for misconduct, considers:
(1) Nature of the misconduct involved;
(2) Need to deter similar misconduct;
(3) Preservation of dignity and reputation of the legal profession;
(4) Protection of the public; and
(5) Sanctions imposed in similar cases.
The Court also considers the ABA Standards for Imposing Lawyer Sanctions. ABA Standard 3.0 provides that the Court should consider:
(1) the duty violated;
(2) the lawyer's mental state;
(3) the potential or actual injury caused by the lawyer's misconduct; and
(4) the existence of aggravating or mitigating factors.
Mathes, 637 So.2d at 847.
Some cases in which this Court has imposed or upheld disciplinary sanctions are: Hall v. Mississippi Bar, 631 So.2d 120 (Miss. 1993) (Court upheld 90-day suspension for neglect resulting in judgment against client); Mississippi Bar v. Hall, 612 So.2d 1075 (Miss. 1992) (Court upheld 60-day suspension for neglect of client's case, after earlier discipline for similar conduct); Broome v. Mississippi Bar, 603 So.2d 349 (Miss. 1992) (30-day suspension with automatic reinstatement and public reprimand for failure to file claim within statute of limitations upheld); Fougerousse v. Miss. State Bar Ass'n, 563 So.2d 1363 (Miss. 1990) (affirmed two concurrent 90 day suspensions because of "pattern of delay, *547 tardiness and denial in representation of clients and in defense of disciplinary proceeding warrants); Steighner v. Mississippi State Bar, 548 So.2d 1294 (Miss. 1989) (180-day suspension appropriate for inadequate preparation and continual neglect of case resulting in summary judgment).
It is worthy to note that Alexander has had significant prior discipline imposed upon him. Each of these earlier disciplinary actions concerned Alexander's neglect of cases, his lack of diligence or promptness, or his failure to adequately communicate with his clients. These same charges are brought against him in the case at bar.
Alexander offered no mitigating circumstances as to his neglect of the Stewarts' case other than to say he had a heavy trial calender and it was hard to schedule appointments, especially with Mr. Stewart living out of state for a period of time.
While we believe Alexander's misconduct does warrant sanctions, we do not feel it warrants suspension. Alexander can not be put totally at fault for the dismissal of the Stewarts' claim against the Davises. Although Alexander should have filed a motion to withdraw and probably should have notified the Stewarts of the Motion to Dismiss, once they terminated Alexander's services, it was up to them to prosecute their claim. It was three months after the Stewarts dismissed Alexander before the Jackson County Circuit Clerk filed the Motion to Dismiss for Lack of Prosecution. During that three month period the Stewarts could have checked into the status of the case on their own or hired another attorney to do so. They did neither, and subsequently the case was dismissed.
However, Alexander did violate the Code of Professional Responsibility and the Rules of Professional Conduct. He neglected the Stewarts' case and failed to keep them properly informed. This is a serious breach and accordingly we hold that Alexander is to be publicly reprimanded. Also, we believe Alexander should not profit at the Stewarts' expense when he did virtually nothing to earn the $2,000.00 advance paid to him. Therefore, Alexander is hereby required to pay the Stewarts $2,000.00 in restitution instead of just the $1,000.00 ordered by the tribunal.

CONCLUSION
For the foregoing reasons, we hereby order Alexander to appear before the Circuit Court of Hinds County on the first day of a term convening next after the date of this opinion or on some other similar day when a maximum number of the Bar and the public are present. It is also ordered that a copy of the reprimand shall be given to the person or persons filing the complaint against Alexander, the Executive Director of the Bar and to the judges of the circuit and chancery districts of Hinds and Jackson counties. A Final Public Reprimand shall be read by the senior judge or his designee at the time herein indicated and placed upon the minutes of the Court. Because the Stewarts reside in Jackson County, Mississippi, and this reprimand stems from a complaint filed in that county, we hereby order that this same reprimand also be read in the Circuit Court of Jackson County and placed upon the minutes of the Court.
It is also ordered that Alexander pay restitution damages to the Stewarts in the sum of $2,000.00, to be paid within thirty days of the date of this opinion.
SUSPENSION VACATED AND FIRNIST J. ALEXANDER TO RECEIVE A PUBLIC REPRIMAND AND PAY $2,000.00 RESTITUTION AS PER THE TERMS OF THIS OPINION.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS and SMITH, JJ., concur.
McRAE, J., concurs in result only.
DAN M. LEE, P.J., not participating.