661 So.2d 722 (1995)
Robbie K. ASHER
v.
The MISSISSIPPI BAR.
No. 94-BA-00324-SCT.
Supreme Court of Mississippi.
September 21, 1995.
*724 Robbie K. Asher, Bay St. Louis, pro se.
J. David Wynne, Michael B. Martz, Jackson, for appellee.
EN BANC.
PITTMAN, Justice, for the Court:

STATEMENT OF THE CASE
This appeal arises from a decision rendered by a Mississippi Supreme Court Complaint Tribunal which imposed an eighteen month suspension against appellant for violations of Rule 1.3, Rule 1.4(a) and (b) and Rule 8.4(a), (c) and (d) of the Mississippi Rules of Professional Conduct. Aggrieved by the findings and punishment imposed by the complaint tribunal, appellant perfects this appeal and assigns the following as error for this Court's review:
I. IS THE COMPLAINT PROCEDURE ESTABLISHED BY THE SUPREME COURT FOR MEMBERS OF THE MISSISSIPPI BAR A VIOLATION OF THE DUE PROCESS CLAUSES OF THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF MISSISSIPPI BECAUSE IT DOES NOT PROVIDE FOR A JURY TRIAL?
II. IS THE COMPLAINT PROCEDURE ESTABLISHED BY THE SUPREME COURT FOR MEMBERS OF THE MISSISSIPPI BAR A VIOLATION OF THE DUE PROCESS CLAUSES OF THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF MISSISSIPPI BECAUSE IT DOES NOT HAVE AN APPEAL TO ANY OTHER COURT?
III. IS THE COMPLAINT PROCEDURE ESTABLISHED BY THE SUPREME COURT FOR MEMBERS OF THE MISSISSIPPI BAR A VIOLATION OF THE DUE PROCESS CLAUSES OF THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF MISSISSIPPI BECAUSE MEMBERS OF THE COMPLAINT TRIBUNAL ARE ALSO MEMBERS OF THE MISSISSIPPI BAR?
The Mississippi Bar filed a cross-appeal. The tribunal made certain findings of fact, with which the Bar agrees. However, the Bar argues that the eighteen month suspension is insufficient for the nature and course of appellant's conduct and as such requests that this Court impose additional disciplinary measures. Therefore, the Bar asserts the following as error via the cross-appeal:
DID THE COMPLAINT TRIBUNAL ERR BY NOT IMPOSING SEVERE ENOUGH PUNISHMENT AND SHOULD ADDITIONAL PUNISHMENT BE IMPOSED ON APPELLANT BY THIS COURT?

STATEMENT OF THE FACTS

The Mississippi Bar's Statement of the Facts[1]
On November 7, 1991, appellant was hired by Mr. Edwin Haber to file a complaint in the Chancery Court of Hancock County to remove a cloud on the title to certain real property. A contract of employment was executed between the two, wherein appellant would receive $2,000 from the proceeds of the sale of real property in dispute. A deed of trust was executed in order to secure this fee arrangement. According to the Bar, Haber *725 inquired several times as to whether appellant had filed the complaint and after numerous inquiries, appellant provided Haber with a copy of what purported to be the first page of the complaint to remove the cloud on the title. This document allegedly had been filed in the Hancock Chancery Court. While this document was allegedly signed by the clerk as filed on November 5, 1991, the cause number was illegible. Further, the facts as developed reveal that appellant: 1) forged the clerk's signature; 2) obtained the stamp of the court and rolled the date back to November 5, 1991; and 3) actually stamped the alleged complaint as filed. Finally, appellant never filed an actual complaint to remove the cloud on the title in the Hancock County Chancery Court.
Subsequently and on April 14, 1992, Haber wrote appellant a letter whereby he fired appellant and also demanded that he be given his file. Inside the file was a complaint, stamped November 5, 1991, with cause number 22,622, and purportedly signed by the clerk and by appellant. Haber took this file containing the complaint to the clerk's office. He was once more informed that no such document was on record as filed in that court.
The Mississippi Bar filed a formal complaint against appellant on September 14, 1993, and appellant was actually served on September 30, 1993. On November 30, 1993, appellant filed his answer with this Court, denying all allegations contained in the Bar's complaint.
A trial before the complaint tribunal was conducted on January 24, 1994. During the course of the trial, appellant essentially admitted his actions as set forth above with regard to his representation of Haber.
Prior to the actual hearing getting underway, the Bar presented the tribunal with a letter written by appellant. In that letter dated January 10, 1994, appellant admitted to certain of the allegations contained in the Bar's formal complaint. The tribunal considered the letter and all parties agreed to proceed with developing the events via the hearing. Therefore, while the facts contained in appellant's letter were stipulated to, the intentions of appellant and the Bar were to present the entire course of events to the Tribunal so that the Tribunal could determine the facts and impose sanctions if necessary.
At the hearing, when appellant was questioned about providing Haber with a copy of the lawsuit, appellant stated that while he provided him with several copies of the unfiled suit, (not signed or stamped filed), he did not provide him with a copy of any filed suit.
Appellant did not dispute Haber's allegations and admitted that the document stamped as a filed copy of the complaint to remove cloud on title came from his office, he stated that he did not remember providing this document to Haber. "If I remembered it, I promise you I would admit it right now... . I wish I did remember it because it would settle this issue, but I do not remember." Appellant admitted that he had signed/forged the deputy clerk's signature on the document while in his office. When asked the reason for forging the clerk's signature, appellant answered:
I told Mr. Haber that I had filed it, when I genuinely thought I had. And I told him you know, I was going to go over to the courthouse and get a copy of it. Well, I went over there and, like I was saying earlier, I couldn't find it. And then  I don't know. I just  I just felt put on the spot, you know... . I was under  under pressure to get it, you know. So I got it.
* * * * * *
You know, the stupid thing is  the stupid thing that I can't figure out, why didn't I go on and file it? When I found out it wasn't filed, why didn't I walk over there next door and file the damn thing. That  I'm sorry. Why didn't I just do it?
Appellant acknowledged the April 14, 1992, letter from Haber terminating his services and requesting his file. Appellant conceded that it was almost a month before Haber received his file but also stated that he had copied and prepared the file for Haber to *726 pick up within a week.[2]
The Bar called Edwin Haber who testified that appellant informed him (after November 7, 1991) that his complaint had been filed. According to Haber, appellant first told him that the suit had been answered but later stated that appellant told him that it had not been answered and at that time gave him a copy of what had allegedly been filed. Haber stated that he enlisted the help of Ms. Ladner, a deputy clerk, and also Mr. Necaise, the Chancery Clerk of Hancock County, who checked the docket to see if the suit had actually been filed.[3]
Appellant in his closing statement before the tribunal, admitted that he had made a mistake and stated that he had attempted to explain his actions to the best of his recollection. Appellant further stated that he had his life better together and that this type of action would never be taken again. He apologized for the inconvenience he caused Mr. Haber and ultimately requested that the tribunal have "a little leniency in any determination that you make regarding punishment." Appellant further stated:
I know the crime I  well, not the crime, but the offense that I did is serious and it was very bad. It was  it was one of the worst things you could do, basically deceit and abusing the trust that I had gotten with the chancery clerk's office and with the court itself. I violated that trust. But I've also worked very hard since that time, and prior to that time as well, to earn their trust and a high degree of trust with the judges and with the clerks.
* * * * * *
I understand the mistake I made. I understand the trust I violated, the responsibility to the legal profession that I violated, the responsibility to the court that I violated, to my client, as well as to the clerk's office. And I am ashamed, embarrassed and humiliated for what I did.
The Bar in closing offered Exhibit 9, a copy of an informal admonition that was rendered against appellant in 1989.
The ruling of the tribunal, now before this Court, imposed an eighteen month suspension on the appellant. The ruling held:
He misled his client Mr. Haber in believing that a suit had been filed, that a complaint had been filed regarding the matter for which Mr. Asher was employed, ... Evidence of the filing was submitted to Mr. Haber in the form of a single document which is the front page of the complaint purporting to be a copy of the original that was filed.
It was developed ... that that really is a forged document in that it was not a genuine article. In addition, the proof establishes that Mr. Asher by use of his privileges as an attorney ... abused his privilege by obtaining the filing stamp of the clerk, used by Mr. Asher to further his effort to mislead his client.

DISCUSSION OF THE LAW
Appellant argues that the complaints procedure established by this Court fails to provide due process to attorneys who go before the complaint tribunal. Specifically, appellant complains that the procedure fails to provide a jury trial and also fails to provide an alternate court for appeal purposes. Finally, appellant asserts that there is an inherent conflict of interest as members of the complaint tribunal sit to judge matters involving other attorneys, all members of the Mississippi Bar.
The tribunal's ruling held in relevant part as follows:
As a member of the Tribunal, we are all three lawyers. As lawyers, we're called upon to rule upon the conduct of other attorneys. The Attorneys are not criminals. Mr. Asher's not charged with criminal activity. He's charged with the way he *727 handled his practice of law and his appearances of these matters in the courts ... It is the findings [sic] of this Tribunal that he did abuse the Rules of Professional Conduct in that he did not report truthfully to his client; that he abused his relationship by the presentation of a forged and unauthentic document; that covertly he obtained the stamp of the clerk; and by the use of that, he further used it as a tool to misguide Mr. Haber.... Therefore, we find that the material allegations of the complaint has [sic] been proved, that Mr. Asher is guilty of the conduct for which he has been charged.
It's the further finding of this Tribunal that they do not feel that he has been candid with the Tribunal in that we find it very difficult to understand how he could not recall the events, how he could not recall the filing of the paper. He could not recall the fact that he had paid the filing fee.
Therefore, in the final part of our ruling in the way of punishment  and this Tribunal is never happy with having to pronounce what they feel is appropriate punishment; but in this case the Tribunal feels it's appropriate to recommend and find that he should suffer a suspension of the practice of law for one and one half years, otherwise for 18 months; ...
In Underwood v. Mississippi Bar, 618 So.2d 64 (Miss. 1993), this Court reiterated the appropriate standard of review in Bar discipline matters:
"The Supreme Court of Mississippi (the Court) has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys... ." On appeal, this Court "shall review the entire record and the findings and conclusions of the Tribunal, and shall render such orders as the Court may find appropriate." When reviewing disciplinary matters this Court, "reviews the evidence de novo, on a case-by-case basis, sitting as triers of fact, and no substantial evidence or manifest error rule shields the Tribunal from scrutiny." Foote, 517 So.2d at 564.
Underwood, 618 So.2d at 66-67 (citations omitted), see also Miss. Code Ann. § 73-3-303 (1991 Supp.); Attorney BT v. Mississippi Bar, 589 So.2d 119, 121 (Miss. 1991); Mississippi State Bar v. Attorney D, 579 So.2d 559, 561 (Miss. 1991); Mississippi State Bar v. Nichols, 562 So.2d 1285, 1287 (Miss. 1990); Mississippi State Bar v. Attorney L, 511 So.2d 119, 121 (Miss. 1987); Mississippi State Bar v. Nixon, 494 So.2d 1388, 1389 (Miss. 1986); Matter of Mississippi State Bar, 361 So.2d 503, 505 (Miss. 1978).
While the review of evidence is de novo, deference is given to the Tribunal's findings `due to its exclusive opportunity to observe the demeanor and attitude of the witnesses, including the attorney, which is vital in weighing the evidence.' Broome v. Mississippi Bar, 603 So.2d 349, 353 (Miss. 1992). See also Mississippi State Bar [Ass'n] v. Strickland, 492 So.2d 567, 571 (Miss. 1986).
Underwood, 618 So.2d at 67, (quoting Broome, 603 So.2d at 353.)
This Court:
has exclusive jurisdiction of matters pertaining to attorney discipline and reinstatement, and this Court is the ultimate judge of matter arising under the Rules of Discipline for the Mississippi Bar. Miss. Code Ann. § 73-3-303 (1991 Supp.); Miss.R.Discip. 1(a); Attorney BT v. Mississippi Bar, 589 So.2d 119, 121 (Miss. 1991); Mississippi State Bar v. Attorney D, 579 So.2d 559, 561 (Miss. 1991); Mississippi State Bar v. John A. Nichols, 562 So.2d 1285, 1287 (Miss. 1990); Mississippi State Bar v. Attorney L, 511 So.2d 119, 121 (Miss. 1987); Mississippi State Bar v. Nixon, 494 So.2d 1388, 1389 (Miss. 1986); Mississippi State Bar v. Phillips, 385 So.2d 943, 944 (Miss. 1980); Bramlett v. Burgin, 382 So.2d 284, 286 (Miss. 1979); Matter of Mississippi State Bar, 361 So.2d 503, 505 (Miss. 1978).
Broome, 603 So.2d at 354.

I. IS THE COMPLAINT PROCEDURE ESTABLISHED BY THE SUPREME COURT FOR MEMBERS OF THE MISSISSIPPI BAR A VIOLATION OF THE DUE PROCESS CLAUSES OF THE CONSTITUTIONS *728 OF THE UNITED STATES AND OF THE STATE OF MISSISSIPPI BECAUSE IT DOES NOT PROVIDE FOR A JURY TRIAL?

Appellant first asserts that the Rules of Discipline established for attorneys in this state do not afford an attorney a right to a jury trial. Appellant states that disciplinary proceedings are "not strictly criminal and not strictly civil", rather they are "quasi-criminal" in nature. Appellant questions whether a disciplinary proceeding becomes a matter properly tried before a jury, as a right to a jury trial is provided in the Constitutions of the United States and Mississippi.
The Bar submits that while appellant argues a violation of his due process rights, the practice of law is a privilege, as opposed to a right, and therefore because appellant violated certain conditions of the practice of law, he in effect lost this privilege. "The practice of law is a privilege, not a property right, and a revocable privilege at that." Mississippi State Bar v. Young, 509 So.2d 210, 219 (Miss. 1987) (citing Levi v. Mississippi State Bar, 436 So.2d 781, 786 (Miss. 1983).
"Matters concerning attorney discipline are quasi-criminal in nature." Alexander v. The Mississippi Bar, 651 So.2d 541, 546 (Miss. 1995); see also Harrison v. Mississippi Bar, 637 So.2d 204, 218 (Miss. 1994); Mississippi State Bar v. Attorney L, 511 So.2d 119, 121 (Miss. 1987).
Notwithstanding the privilege argument, it has often been stated that disciplinary proceedings are inherently adversary, therefore attorneys are to be afforded due process of law. Mississippi State Bar v. Young, 509 So.2d at 212; Alexander v. The Mississippi Bar, 651 So.2d at 546; Harrison v. Mississippi Bar, 637 So.2d at 218; Mississippi State Bar v. Attorney L, 511 So.2d at 122. However, this Court has also stated that "there are among the procedural trappings normally attendant upon a criminal trial numerous `rights' which have no place in bar disciplinary proceedings. For one thing, the attorney has no right to trial by jury." Young, 509 So.2d at 212-213.
Appellant's arguments concerning due process and the right to a jury trial appear to be without merit as he was afforded notice and an opportunity to be heard. "In reviewing bar disciplinary proceedings, this Court has held that due process `demands that the proceedings be conducted with regard to the attorney's rights of notice and opportunity to be heard.'" Netterville v. Mississippi State Bar, 397 So.2d 878, 883 (Miss. 1981) (citing Mississippi State Bar v. Attorney-Respondent in Disciplinary Proceedings, 367 So.2d 179 (Miss. 1979). The record indicates that appellant was afforded both elements required under the law.

II. IS THE COMPLAINT PROCEDURE ESTABLISHED BY THE SUPREME COURT FOR MEMBERS OF THE MISSISSIPPI BAR A VIOLATION OF THE DUE PROCESS CLAUSES OF THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF MISSISSIPPI BECAUSE IT DOES NOT HAVE AN APPEAL TO ANY OTHER COURT?
Appellant next contends that 1) the complaint tribunal is an arm of the Supreme Court of Mississippi and not a separate court; and 2) the complaint tribunal acts under "the guise of the Supreme Court." Appellant argues that this, coupled with the fact that the Supreme Court reviews attorney disciplinary matters de novo, creates a situation whereby there is no direct appellate review. Appellant further contends that "the Supreme Court reviews the decision of the complaint tribunal, it does not act as an appellate court to either affirm or reverse a decision of a lower court." Brief of Appellant, at p. 6.
Appellant argues that "[i]f an individual loses a decision before the complaint tribunal or the Supreme Court, then there is no where to go for an appeal. Without the right to an appeal, an attorney before a complaint tribunal or the Supreme Court does not have due process." Brief of Appellant, at p. 6-7. However, what appellant fails to assert or state is the substitute or alternate process for review of these matters.
*729 The Bar counters this argument first by stating that because this Court reviews disciplinary proceedings de novo, the matter is considered anew and this Court is "not limited by the decision of the complaint tribunal (the trial court). This type of review further places no limit on this Court having to find an abuse of discretion before it can substantively review the matter."
In Terrell v. Mississippi Bar, 635 So.2d 1377, 1385 (Miss. 1994), this Court in considering an attorney discipline matter, spoke to the review pursued by this Court:
When disciplinary actions are appealed to this Court, we evaluate the evidence by reviewing the entire record `de novo, on a case-by-case basis, sitting as triers of fact, and no substantial evidence or manifest error rule shields the Tribunal from scrutiny.' Mississippi State Bar v. Blackmon, 600 So.2d 166, 171 (Miss. 1992); citing Foote v. Mississippi Bar Ass'n, 517 So.2d 561, 564 (Miss. 1987).
The Bar also contends that appellant was afforded his due process rights and therefore has no viable claims concerning the appeal procedure for attorney disciplinary matters. As there are no Mississippi cases on point, that is, addressing a due process claim as it relates to an attorney's right to a different appeal route in attorney disciplinary proceedings, the Bar cites and relies on cases decided by other jurisdictions. The Bar primarily relies in Mildner v. Gulotta, 405 F. Supp. 182 (E.D.N.Y. 1975), aff'd 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), which involved an attorney filing for constitutional review of the New York attorney disciplinary procedure with the federal district court. In this case, there was no right of review in the state's highest appellate court. The federal court stated:
[W]ith all respect to the Supremacy Clause, we do not construe § 1983 or our constitutional question jurisdiction as authorizing an inferior federal court to pass upon the procedure employed by the State courts to discipline attorneys ... or to interfere with their judgment of such matters... . That is not to say that disciplined attorneys have no remedy. Rather, we believe that attorneys above all should know that the State court [sic] expound and apply the Constitution, and if they do so erroneously, the remedy is to apply to the [United States] Supreme Court for review.
Id. at 184-185.
Notwithstanding the foregoing, the court did in fact consider Mildner's constitutional due process issue:
[W]ith respect to the criticized denial of appeal as of right, there is abundant authority for the proposition that outright denial or abridgement of independent, obligatory appellate review of judicial decisions is not a denial of due process. If this is so even in criminal cases, it is a fortiori so in `quasi-criminal' case [sic] such as these.
Id. at 195.
As was held in Mildner, appellant is subject to jurisdiction of this Court and if he remains aggrieved after this Court rules, he should then proceed for review by the United States Supreme Court.
Further research reveals that other jurisdictions have considered this very issue. In Maryland State Bar Ass'n v. Boone, 255 Md. 420, 258 A.2d 438, 443 (1969), the court of appeals considered other jurisdictions and their right to review and regulate attorney disciplinary matters:
[T]he Court of Appeals in the exercise of its inherent and fundamental judicial power has supervised, regulated and controlled the admission of lawyers... . The statutes and rules have consistently confided to the lower courts the power to act in both disciplinary proceedings and reinstatement proceedings... . [W]e think the Court of Appeals has the right and the duty ultimately to supervise the exercise of disciplinary and reinstatement powers of the local courts.
"The superintending power of courts over their bars is deeply ingrained in the system of law which we inherited from our forebears." Attorney Grievance Commission of Maryland v. Kerpelman, 292 Md. 228, 438 A.2d 501, 507 (1981).
*730 Mississippi law does require that attorneys involved in disciplinary proceedings receive due process. See Mississippi State Bar v. Young, 509 So.2d at 212; Alexander v. The Mississippi Bar, 651 So.2d at 546; Harrison v. Mississippi Bar, 637 So.2d at 218; Mississippi State Bar v. Attorney L, 511 So.2d at 122. In addition, this Court conducts a de novo review and does not solely rely on the findings of the tribunal. See Broome v. Mississippi Bar, 603 So.2d 349, 353 (Miss. 1992); Mississippi State Bar Ass'n v. Strickland, 492 So.2d 567 (Miss. 1986); Underwood v. Mississippi Bar, 618 So.2d at 66-67, (quoting Broome, 603 So.2d at 353). Based on the foregoing analysis, it appears that appellant's second issue is without merit.

III. IS THE COMPLAINT PROCEDURE ESTABLISHED BY THE SUPREME COURT FOR MEMBERS OF THE MISSISSIPPI BAR A VIOLATION OF THE DUE PROCESS CLAUSES OF THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF MISSISSIPPI BECAUSE MEMBERS OF THE COMPLAINT TRIBUNAL ARE ALSO MEMBERS OF THE MISSISSIPPI BAR?
Finally, appellant argues that because the members of the complaint tribunal were all members of the Mississippi Bar, they had an interest in the outcome of this matter and therefore a conflict of interest existed. Brief of Appellant, at p. 8. In support of this argument, appellant cites § 9-1-11 of Mississippi Code Annotated (1972):
"The judges of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties."
As this Court has never squarely considered this issue, the Bar once more relies on Mildner v. Gulotta, 405 F. Supp. 182 (E.D.N.Y. 1975), aff'd 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), wherein the Court analyzed the review process of disciplinary matters conducted by fellow attorneys:
Perhaps the most important element of such proceedings, and that which gives them their unique status, is the universal recognition that the same Court before whom attorneys, acting as its officers are admitted to practice is the tribunal which must sit in judgment of charges of professional misconduct against them. There can be no doubt about such a court's inherent power of autonomous control over the conduct of its officers. [footnote omitted]. Disciplinary proceedings, while perhaps susceptible to such a label as `quasi-criminal' or to such a terse description as `comparable to a criminal rather than to a civil proceeding' (citation omitted), are in reality neither.
Mildner, 405 F. Supp. at 191.
There are two Mississippi code sections which assist in analyzing the jurisdictional issue raised by appellant. First, § 73-3-301 states in relevant part:
Any attorney regularly admitted to practice law in the state of Mississippi ... [is] subject to the exclusive and inherent disciplinary jurisdiction of the supreme court of Mississippi and the disciplinary agencies hereinafter established and designated; provided, however, nothing herein contained shall be construed to deny to any other court such powers as are necessary for that court to maintain control over practice in and proceedings conducted before it, such as ... suspending or expelling their members from membership in such local bar association.
Further, the next section establishes the disciplinary agencies:
§ 73-3-303 Disciplinary agencies of court.

The jurisdiction of the court shall be administered in the matter hereinafter set out, and the following entities are hereby established and designated as agencies of the court for such purposes: ...
(c) The complaint tribunals appointed by the Supreme Court of Mississippi.
*731 A reading of the statutes combined with the history of this court's review of attorney disciplinary matters discounts appellants assertions.
Appellant further argues that the alleged conflict of interest is compounded by the fact that there is no jury and the members of the complaint tribunal sit not only to decide and apply the law but also serve as the trier of fact. Appellant states that "under these circumstances, it becomes impossible for an attorney before a complaint tribunal to receive a fair and impartial hearing ... [t]herefore, due process is not afforded the Attorney in this matter." Brief of Appellant, at p. 8-9.
The method whereby this Court reviews disciplinary matters is a careful one where the entire history is taken into account. We should note that the Bar and the complaint tribunal are continuously improving the process and the discipline of offending members, they both have a thankless but absolutely necessary task. Based on the foregoing, it appears that appellant's third assignment of error is also without merit.

THE CROSS-APPEAL

DID THE COMPLAINT TRIBUNAL ERR BY NOT IMPOSING SEVERE ENOUGH PUNISHMENT AND SHOULD ADDITIONAL PUNISHMENT BE IMPOSED ON APPELLANT BY THIS COURT?
The Bar contends that the punishment, consisting of an eighteen month suspension, imposed by the complaint tribunal was far too lenient under the facts and circumstances of appellant's conduct. The Bar further requests that this Court in conducting its de novo review, impose further sanctions on appellant.
The Rules of Discipline provide a wide range of disciplinary actions which may be taken in response to attorney misconduct. The two which prohibit the practice of law, suspension and disbarment, are distinguished by the duration of the probation. In cases of suspension, the prohibition against the practice of law is for a fixed period of time. Rules of Discipline 8(b)(iii). As far as discipline is concerned, this Court has held that discipline "is not to punish the guilty attorney, but to protect the public, the administration of justice, to maintain appropriate professional standards, and to deter similar conduct." Mississippi State Bar Ass'n v. A Mississippi Attorney, 489 So.2d 1081 (Miss. 1986).
"The sanctions imposed by this Court may be more or less severe than those which the complaint tribunal has recommended." Culpepper v. Mississippi State Bar, 588 So.2d 413, 420 (Miss. 1991) (citing Steighner v. Mississippi State Bar, 548 So.2d 1294, 1297 (Miss. 1989).
In determining what discipline, if any, is appropriate we look to several factors. These factors include: 1) the nature of the misconduct involved; 2) the need to deter similar misconduct; 3) the preservation of the dignity and reputation of the profession; 4) the protection of the public; and 5) the sanctions imposed in similar cases. [citations omitted] Additionally, the ABA has approved a set of standards for imposing lawyer sanctions which includes the following factors a court should consider when imposing sanctions: a) the duty violated; b) the lawyer's mental state; c) the actual or potential injury caused by the lawyer's misconduct; and d) the existence of aggravating or mitigating factors.
Mississippi State Bar v. Blackmon, 600 So.2d 166, 173 (Miss. 1992).
The record reveals that appellant admitted to his actions with regard to his representation of Haber. For consideration and review, it is necessary to engage in a comparison of this Court's case law concerning similar conduct and violations of the Disciplinary Rules. A review of cases decided by this Court and involving violations of Rules 1.3, 1.4 and 8.4, indicates that both suspensions and disbarments have been imposed.
In Haimes v. Mississippi State Bar, 551 So.2d 910 (Miss. 1989), this Court said that "[t]his Court has ultimate responsibility for the discipline of members of the Mississippi State Bar and for assuring that only those who adhere to the profession's high ethical standards are permitted the privilege of providing legal services to the public." Haimes, *732 551 So.2d at 913. This Court has recognized that the misconduct giving rise to suspension differs from that giving rise to disbarment:
Implicit in the judgment of suspension, stopping short of disbarment, is that the attorney's character has not been shown so deficient that proof of general moral and professional rehabilitation be required.
Haimes, 551 So.2d at 912.
Justice Sullivan in his dissent in The Mississippi Bar v. Mathis, 620 So.2d 1213 (Miss. 1993) discussed the ABA standards for imposing discipline in cases where an attorney has engaged in conduct involving fraud, deceit and dishonesty:
§ 5.11 Disbarment is generally appropriate when: . .. (b) a lawyer engages in any intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
* * * * * *
§ 6.11 Disbarment is generally appropriate when a lawyer, with the intent to deceive the Court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on a legal proceeding.
* * * * * *
§ 6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
Mississippi Bar v. Mathis, 620 So.2d at 1225 (quoting ABA Standards For Imposing Lawyer Sanctions).
Further, in Mathis, this Court upon reviewing Mathes' conduct, reduced the term of suspension ordered by the Tribunal. Although there was a finding that Mathes had violated Rules 1.15, 3.4 and 8.4, this Court balanced the conduct with that of other attorneys and compared the penalties imposed. This case weighs in favor of appellant in that Haber was not directly harmed; the statute of limitations has not run, and Haber suffered no pecuniary loss.
However, it is abundantly clear in the present case that appellant actively misrepresented his client. Not only did he fail to file the complaint, he lied about it being filed and then proceeded to paint a picture of it having been filed. Appellant went so far in actively misrepresenting his client that he fraudulently used the clerk's stamp, rolled the date back and further forged the clerk's signature.

CONCLUSION
Based on the foregoing arguments and authorities, the appellant's arguments are without merit.
With regard to the cross appeal, there is precedent in support of both positions of either affirming the eighteen month suspension or imposing additional penalties, we choose the former and affirm the eighteen month suspension.
ON DIRECT APPEAL; JUDGMENT IS AFFIRMED. ON CROSS APPEAL; ROBBIE K. ASHER IS SUSPENDED FOR EIGHTEEN MONTHS FROM THE PRACTICE OF LAW.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
McRAE, J., concurs in result only.
NOTES
[1] Appellant's brief does not contain a statement of the facts, therefore the facts are largely taken from the brief of the Mississippi Bar and from the testimony elicited during the course of the hearing held on January 24, 1994.
[2] According to appellant, Haber often stopped in the office and appellant assumed that he would be by to collect it. However, appellant was also annoyed with Haber and therefore did not immediately mail the file to him. Thereafter, appellant realized that he should forward the file and mailed the same on May 20, 1992.
[3] Both Necaise and Ladner testified that they searched the docket for the complaint. Necaise also recalled having one or two phone conversations concerning the whereabouts/existence and/or possible absence of Haber's complaint.